### WEEDIN, Com'r of Immigration, v. YEE WING SOON.

No. 6336.

Circuit Court of Appeals, Ninth Circuit.

March 30, 1931.

Anthony Savage, U. S. Atty., and Hamlet P. Dodd, Asst. U. S. Atty., both of Seattle, Wash. (John F. Dunton, U. S. Immigration Service, of Seattle, Wash., on the brief), for appellant.

Stephen M. White, of San Francisco, Cal., and Hugh C. Todd, of Seattle, Wash., for appellee.

Before RUDKIN, WILBUR, and SAWTELLE, Circuit Judges.

WILBUR, Circuit Judge.

The appellee claims to be the son of Yee Kam, a citizen of the United States of the Chinese race. Appellee was born in China and applied for entry into the United States April 26, 1930, accompanied by his alleged father, Yee Kam. It is conceded that if the relationship of father and son exists as claimed by the applicant and by his alleged father that he is an American citizen and entitled to admission as such. Appellee was ordered deported by the immigration authorities and was released by the District Court upon habeas corpus proceedings. The immigration commissioner appeals from this decision. The record shows a considerable number of discrepancies between the testimony of the appellee and two previously landed sons of Yee Kam. The appellee relies upon the proposition that the witnesses are in accord upon such a multitude of details concerning their home and village and family life as to convince any reasonable man of the truth of their testimony as to their relationship. Appellee, while admitting that the evidence shows discrepancies between the testimony of the father and the alleged son, claimed that such discrepancies are those reasonably to be anticipated in the testimony of truthful witnesses. At the outset it must be conceded that there is complete accord in the

testimony upon such a multitude of details as would hardly be expected if the claim of relationship did not exist. Indeed, such a complete accord would hardly be anticipated if the relationship did exist unless there was some previous conference between the witnesses to refresh their memory upon the numerous details upon which they might reasonably expect to be examined.

In the case at bar, we have a multitude of agreements upon a great variety of details in the testimony which are quite consistent with the claimed relationship and point with great emphasis to the truth of the claim. On the other hand, we have a discrepancy that is difficult if not impossible to reconcile with the alleged relationship. That discrepancy we will state in the language of the immigration authorities:

"The alleged father testifies that his mother died last year in his house, the claimed house of this applicant; that she had been living in his house for some time before her death; that he and the son who this applicant claims to be were in that house at the time of her death, which occurred early in the morning; and that two feasts attended by eight or ten guests from neighboring villages were held in the day of the funeral. The applicant testifies that his paternal grandmother died, not in his house, but in the house of his brother Wing Hok; that prior to her death she always lived in Wing Hok's house and never in his own; that he was not present when she died or in the same house where she died; that her death occurred about noon; and that no feasts were held and no one came from a neighboring village on the day of the funeral. This disagreement is sharpened by the testimony of the alleged brother that his paternal grandmother never lived in his house."

In considering this discrepancy, which is clearly shown by the testimony, it should be noted that the applicant was living with his father, in their home at the time of the death of the grandmother; that he was then nearly twenty years old; and that the incident occurred less than a year before appellee and his father were examined by the immigration authorities. It is difficult to see how there could be such a discrepancy between the testimony of the father and son if they were living together at the time of her death as they both testify. There is hardly any room for serious claim of forgetfulness or mistake, as the appellee testified definitely as to the fact of the grandmother's death and the time of it. He remembers the circumstances at-

tending the funeral and identifies her place of burial in accord with the testimony of the alleged father. On the other hand, the discrepancies as to whether or not there was a clock in the house, and whether or not the father carried a watch, taken alone, might well be disregarded as too trivial to justify the Secretary of Labor in his order. It is difficult to understand why the father and son, so recently living together in their home, should disagree as to whether the one dog about the house was white or black. The village in which appellee and his alleged father claimed to have resided consisted of nine houses; the father testified that there were two water buffaloes in the village belonging to two of the inhabitants thereof, while the son testified there were none.

There are other discrepancies in the testimony which we will not pause to enumerate except to say that one related to ownership of rice land by the father and the cultivation thereof by the mother and son and showed disagreement which could hardly be expected if the claimed relationship did exist. In view of these discrepancies it cannot be said that the proceedings before the immigration authorities were unfair. The order of the District Court releasing appellee is reversed, with directions to quash the writ of habeas corpus, and remand the appellee to the custory from whence he was taken.