**WONG SUN YING v. WEEDIN, Commissioner of Immigration.**

**No. 6415.**

Circuit Court of Appeals, Ninth Circuit.

June 8, 1931.

Hugh C. Todd, of Seattle, Wash., for appellant.

Anthony Savage, U. S. Atty., and Hamlet P. Dodd, Asst. U. S. Atty., both of Seattle, Wash. (John F. Dunton, U. S. Immigration Service, of Seattle, Wash., on the brief), for appellee.

Before WILBUR and SAWTELLE, Circuit Judges, and KERRIGAN, District Judge.

KERRIGAN, District Judge.

The appellant, Wong Sun Ying, was born in China, but claims the right to admission to the United States as a foreign-born son of Wong Wah, a native-born citizen. The citizenship of the alleged father is conceded by the Immigration Service, but the Board of Special Inquiry and the Board of Review in the Department of Labor have refused appellant admission on the ground that the proof fails to establish that he is the son of Wong Wah. A petition for writ of habeas corpus has been denied, from which order this appeal is taken.

Considering the record as a whole, this court is of the opinion that the tribunals of the Department of Labor have reached their conclusions after giving the applicant a fair hearing. Under the rule that the courts have the power to set aside the findings of such tribunals only when the record shows that the appellant has not been granted a fair hearing, the order for the deportation of appellant should not be disturbed.

In this case the alleged father was in China at a time to make possible the paternity of the 11 year old boy seeking admission to this country. Although the records of the Immigration Service upon the previous arrivals and departures of Wong Wah, the alleged father, and the testimony of near relatives, seem to show that he has a son of the approximate age of appellant, the discrepancies between the testimony of the boy and that of his alleged father are such that it may fairly be believed that appellant is not that son. The nature of the discrepancies and agreements indicates that the appellant is some other boy of the village substituted for the son of Wong Wah.

All of the witnesses agree in the main as to matters of family pedigree, the identification of family photographs, and as to details of the village and its life. The alleged father and the appellant agree as to certain irrelevant details of family life such as the length of time the alleged father spent on a visit to Hong Kong during his last visit and the fact that the father smoked cigarettes which he rolled himself. If a fraud were being perpetrated, the boy would be carefully coached as to matters of family pedigree and family pictures and as many details of family life as could be anticipated as a subject of questioning. It is significant in this connection that the alleged father left China for the United States only a few months before the boy. Agreement as to details about the village would be expected from a boy who had lived there. A bright boy of 11 years of age, knowing that he would be subjected to rigid cross-examination about his village, would sharply inspect many details before leaving.

Discrepancies in matters of family life which the alleged father might forget to men-

tion are the ones which are significant. It is in just this field that a boy not brought up in the family would have to quickly fabricate his testimony. One of the most important discrepancies concerns a visit of an alleged married sister of appellant. Wong Wah testified definitely that this daughter returned from a distant village where she had been living for several years ever since her marriage and made a month's visit at his home during his last visit to China. The testimony agrees that the boy was home all that time. A boy of that age would not be apt to forget a complete family reunion, but he nevertheless testifies consistently that his sister had not been home since her marriage. The concurring visits of the father from a distant land and a sister not seen since her marriage are among the things that are deeply important to the mind of a 9 year old boy, the age of appellant at that time. In considering the weight of discrepancies, the psychological importance of their subject-matter to the witness should be estimated. If the subject is psychologically important and if it concerns the intimate family life, then a discrepancy with reference to it is inconsistent with the alleged relationship. This is the essence of the test used by this court in the case of Weedin v. Yee Wing Soon, 48 F.(2d) 36, 37. In that case the alleged father testified that the paternal grandmother of appellant had died within the year preceding the taking of the testimony, in the home shared by himself and the applicant, and that on the day of her funeral there were two feasts attended by eight or ten guests from neighboring villages. The applicant testified that she died at the time stated by the alleged father, but that she died, not in their home, but in the home of a brother, that no feasts were held, and that no guests came from a distance. The court held that such a discrepancy was inconsistent with membership in the same family of the witness and the alleged father.

In the case before us there is another discrepancy inconsistent with mutual family life. The appellant testified that a servant girl, 15 or 16 years old, had been employed in the home continuously since 1926 or 1925

up to the time when he left China. He stated that this servant girl did general work in the house, including the serving of meals to his father. The alleged father, on the other hand, testified that there never had been a servant girl employed in his house, and that no such girl assisted in the work or came to the house at all. The attorney for appellant attempts to explain this discrepancy by an ex parte statement made to him by the alleged father that he thought the examiner was inquiring about slave girls, and did not want to prejudice his position in this country by admitting that a slave girl was kept in his home. He admitted that there was such a girl in his home. The explanation is plausible, but it is equally plausible that the explanation was invented when the discrepancy was called to his attention.

The appellant testified that during all the time his father was last in China he slept in the same room, which is one of the bedrooms, with his father. The alleged father testified that throughout that visit he slept in the parlor of his house, and that the appellant never slept with him. This court has held that a similar discrepancy is not controlling in showing want of parental relationship if the rest of the record is consistent with the relationship. Hom Chung v. Nagle, 41 F.(2d) 126. Among the discrepancies which are ambiguous in themselves, but the effect of which is cumulative, may be mentioned the fact that the appellant had no recollection of having seen two trunks and a blanket brought by his alleged father from America which were in his mother's room during the father's entire visit, and the fact that the appellant and his alleged father differed as to details of the latter's departure and the taking of his baggage from the home. Some of these discrepancies, taken alone, might only indicate the inaccuracy of human observation and the frailty of human memory, but when they are added to what may be called the "key" discrepancies their effect is cumulative to induce in the mind a belief that the parental relationship does not exist between the American citizen and the appellant.

Judgment affirmed.