**WONG SOO v. NAGLE, Commissioner of Immigration.**

No. 6715.

Circuit Court of Appeals, Ninth Circuit.

Aug. 29, 1932.

See, also, 45 F.(2d) 1023.

Marshall B. Woodworth, of San Francisco, Cal., for appellant.

Geo. J. Hatfield, U. S. Atty., and A. E. Bagshaw, Asst. U. S. Atty., both of San Francisco, Cal. (Arthur J. Phelan, U. S. Immigration Service, of Washington, D. C., on the brief), for appellee.

Before WILBUR and SAWTELLE, Circuit Judges, and JAMES, District Judge.

JAMES, District Judge.

The Immigration Department having refused him admission to the United States, the applicant brought his petition for habeas corpus, which was heard in the District Court. That court made its judgment dismissing the petition and remanding the petitioner. Petitioner appealed, and the case has been submitted upon the record and the briefs of respective counsel.

Wong Soo claimed to be the son of Wong Wing, a citizen of the United States. He applied for admission in the year 1928. Admission was refused on the ground that the claimed relationship was not established, and Wong Soo was returned to China. On November 12, 1930, he again arrived at the port of San Francisco and renewed his request for admission, basing his claim on the same ground as that previously considered. After hearing had, his application was for the second time rejected. After an appeal had been taken to the board of review, the applicant's counsel requested that the proceedings be reopened for the purpose of having introduced the testimony of a new witness. The case was reopened, and the desired witness was produced and testified. The conclusion of the immigration officers was not affected by the additional testimony, and the order denying admission was confirmed on final review by the above mentioned board.

The appeal presents the single question whether the applicant failed, as the board

of special inquiry determined, to establish that he was the son of Wong Wing. On behalf of the appellant, it is insisted that the discrepancies in the testimony which led the immigration officers to conclude that the applicant had not made sufficient proof were trivial and related to immaterial matters, and such only as might occur in the testimony of the average witness.

Wong Wing, the alleged father, had not, prior to 1928, according to his claim, seen the son since December, 1907, at which time the latter was one month old. At the time of his last arrival at the port of the United States, the boy was twenty-four years of age. The father based his identification on certain photographs, which he claimed the son had sent to him from China. Wong Yin, an alleged brother of the applicant, testified that he had seen his brother when he was two years old. At the inquiry had in 1928, the applicant testified that he was married and had one son. The alleged father at the same time testified that the son had no children, and the alleged brother testified that the applicant was not married. In 1928 the applicant testified that his paternal grandfather was dead, that he did not know when or where he died, and that he had never seen him to his knowledge, and that the grandfather had never lived or eaten with him in his home in China. He testified that his paternal grandmother was dead, and that he did not know when or where she died, and that to his knowledge he had never seen her. It was shown that Wong Wing, the alleged father, had testified in 1920, when another alleged son was applying for a return certificate, that his (Wong Wing's) mother had died three or four years prior. If she had died four years prior to 1920, the alleged applicant at that time would have been about the age of thirteen years. At the last hearing, in 1930, Wong Wing testified that his mother had died in 1911 in his house in Wong Shah Hon village, where applicant had resided. He could not explain why he had in 1920 stated that she had died but three or four years prior, which would be 1916 or 1917. The board of inquiry had the right to consider that this testimony in 1930 of Wong Wing regarding the death of his mother in his house in China had been purposely changed in order to make it consistent with the testimony of Wong Soo in 1928 that he had never seen his paternal grandmother, for, if he was of the age of about thirteen years at the time she died, and she had died at the house where he lived, it could hardly

have been true, as he testified in 1928 that he had never seen her to his knowledge.

There was a further discrepancy in Wong Wing's testimony as given upon the different dates, not so important, perhaps, but it was one which tended to discredit the truthfulness of the witness. Wong Wing in 1928 testified that he had not been told where his parents were buried. In 1930 he stated that they were buried in Pong Shan cemetery, that his wife had written him of that fact. At the same time he admitted that he had received that information prior to giving his testimony in 1928, when he had said he did not know where they were buried and that he had never been told.

The board of inquiry had the undoubted right to look with much disfavor upon the matter of the credibility of Wong Hing Wee, who was the new witness produced at the reopening of the hearing. Wong Soo had previously been asked whether there was any other person besides his alleged father and brother living in the United States who knew him to be the son of Wong Wing, and the only name he gave was that of Jue Soon (who had appeared as a witness in 1928, but did not appear at the 1930 hearing), and, although given a full opportunity so to do, he had failed to mention Wong Hing Wee, although he claimed in later testimony given by him that he had seen Wong Hing Wee in China, and that the person named had called at his home, and that he had attended his (Wong Hing Wee's) wedding feast. Wong Hing Wee gave positive testimony that he had seen the applicant in China, and that the applicant had inquired of him regarding his father, who Wong Hing Wee claimed had worked in a market with him in San Francisco. When Wong Hing Wee had returned to the United States in May, 1930, he had stated, in response to formal inquiry by the immigration officers, that while in China he had not visited the home of any resident of the United States, and had not been introduced to the son of any such resident. When confronted with this statement, he attempted to explain his answer by saying that he did not understand the question in the way it was framed. It was shown that this witness was in San Francisco at the time the hearing in 1930 was first had, and that his attendance could have been secured. The facts adverted were sufficient to authorize the board of inquiry to reject the witnesses' testimony as untrue and as having been procured for the purpose of furthering the applicant's case.

It seems unnecessary at greater length to review the testimony. Enough has been stated to show that the immigration officers acted clearly within their right in refusing to be satisfied with the showing made in support of the applicant's claim that he was entitled to be admitted as the son of the citizen. The law has committed to the Labor Department the right to make a final judgment on the facts in immigration cases. The decisions are of great number in which discrepancies similar to those shown in this record have been held to justify the refusal of the immigration department to admit Chinese persons. The United States attorney has incorporated a list of pertinent cases, all decisions of this court, in his brief. Among them are Chin Wing v. Nagle (C. C. A.) 55 F.(2d) 609; Weedin v. Yip Kim Wing (C. C. A.) 41 F.(2d) 665; Tse Yook Kee v. Weedin (C. C. A.) 35 F.(2d) 959; Weedin v. Ye Wing Soon (C. C. A.) 48 F.(2d) 36, and Weedin v. Lee Gock Coo (C. C. A.) 41 F.(2d) 129.

The judgment is affirmed.