## DHALANDAS TULSIDAS ET AL. *v.* INSULAR COLLECTOR OF CUSTOMS.

CERTIORARI TO THE SUPREME COURT OF THE PHILIPPINE ISLANDS.

No. 77. Submitted May 2, 1923.—Decided May 21, 1923.

1. A decision of the duly constituted immigration authorities holding an applicant not of a status entitling him to admission, should not be rejected in *habeas corpus* unless resulting from manifest abuse of power and discretion. P. 263.
2. The right of an alien applicant to be admitted, under the Immigration Act of 1917, as a merchant, does not depend on his pre-

senting a certificate of his status, issued under § 6 of the Act of May 6, 1882, c. 126, 22 Stat. 58, 60, as amended by § 6 of the Act of July 5, 1884, c. 220, 23 Stat. 115, 116. P. 263.

3. To be admissible as a merchant, under the Immigration Act of 1917, an alien must be actually a merchant,—an owner of a business,—not merely a salesman, manager or other employee; and his status as merchant must exist at the time of his application for admission. P. 264.

Affirmed.

CERTIORARI to a judgment of the Supreme Court of the Philippine Islands, which discharged a writ of *habeas corpus* sued out by the petitioners in a court of first instance, to test the legality of their detention, by the respondent, as inadmissible aliens.

*Mr. Adam C. Carson, Mr. Hartford Beaumont* and *Mr. W. Davis Conrad* for petitioners.

*Mr. Grant T. Trent, Mr. Logan N. Rock* and *Mr. F. G. Munson* for respondent.

MR. JUSTICE MCKENNA delivered the opinion of the Court.

Petition in *habeas corpus* in which petitioners pray to be delivered from the custody of the Insular Collector of Customs, by whom they aver that they are detained for deportation from Manila, at which place they are entitled to land and remain under the Immigration Act of February 5, 1917, c. 29, 39 Stat. 874, being merchants.[1]

---

[1] "That the following classes of aliens shall be excluded from admission into the United States: . . . unless otherwise provided for by existing treaties, persons who are natives of islands not possessed by the United States adjacent to the Continent of Asia, . . . or who are natives of any country, province, or dependency situate on the Continent of Asia . . . , and no alien now in any way excluded from, or prevented from entering, the United States shall be admitted to the United States. The provisions next foregoing, however, shall not apply to persons of the following status or

Petitioners arrived at Manila, September 26, 1919, and were taken before a Board of Special Inquiry formed by the Insular Collector of Customs, constituted of three officers of the Bureau of Customs, duly designated and qualified to serve on such Board at the port of Manila in accordance with law, to determine whether petitioners should be allowed to land, or should be deported.

The right of petitioners to land was considered by the Board separately and decided separately, but for convenience we have considered their applications and the proceedings thereon as joint, and, therefore, it is only necessary, in representation of the applications and the proceedings, to say that the Board after consideration of the applications and the testimony given in support thereof, decided as to Tulsidas that it appeared that he had no business in India, and none in the Philippines, that his passport showed that he was only a salesman, and that it was clear that he was " not a merchant within the meaning of the Immigration Law, and, therefore, not an exempt and entitled to landing." He was refused landing.

The Board also refused landing to Lekhraj and Sukhrani, deciding that they were salesmen, not industrial partners as they claimed to be, of Wassiamall Assomall & Co., but salesmen in that store. The Board further decided that they had no business of their own and that industrial partners were not merchants within the meaning of the Immigration Law.

From the decisions of the Board, petitioners prosecuted appeals to the Insular Collector of Customs and it appearing to him, as he said, that the decisions of the

occupations: . . . merchants, . . . , but such persons . . . who fail to maintain in the United States a status or occupation placing them within the excepted classes shall be deemed to be in the·United States contrary to law, and shall be subject to deportation as provided in section nineteen of this Act." [§ 3.]

Board were " reasonable and proper " in that petitioners
being natives of India, failed to show that they belonged
to any exempted classes under the provisions of § 3 of
the Immigration Act of February 5, 1917, he refused
them landing, and ordered that they be "returned to
their port of embarkation in accordance with law."

It will be observed, therefore, that the officers on whom
was imposed the duty of administering the Immigration
Law and passing upon the right of an alien applicant to
admission into the United States, decided that the peti-
tioners were of the class excluded from admission, and
refused them landing.

In question of the legality of that ruling, proceedings
were instituted in the Court of First Instance by a peti-
tion for *habeas corpus.* To the petition, the Attorney
General of the Islands, as representative of the Insular
Collector of Customs, and in his official capacity, opposed
the decision rendered by the Board of Special Inquiry
and the Insular Collector of Customs, and denied the
allegations of the petition " except as same may be ad-
mitted in, or appear to be true from, the proceedings of
the immigration officials in this case."

The Court of First Instance reversed the rulings of
the immigration officials and " definitely ordered that the
petitioners be placed at liberty."

The court assigned especial probative force to the
partnership agreement introduced in the case, " the
genuineness of which " the court said was not questioned,
according to which the court further said, " the peti-
tioners were admitted as industrial partners of said part-
nership, the first having a right to fifteen per cent of the
profits, the second ten per cent, and the third five per
cent." And the court was of the view that " industrial
partners " were as much merchants as " capitalist part-
ners."

The Supreme Court of the Philippine Islands to which
the case was appealed, revoked the granting of the writ

of *habeas corpus,* and ordered and decreed that the judgment of the Department of Customs ordering deportation of petitioners be affirmed.

The court based its decision on two grounds: (1) Granting that appellees (petitioners) are merchants, they did not present as proof of the fact the certificate issued under § 6 of the Act of Congress of May 6, 1882, c. 126, 22 Stat. 58, 60, as amended by § 6 of the Act of July 5, 1884, c. 220, 23 Stat. 115, 116, which, it is provided, shall be the sole evidence permissible to establish the exemption of an alien from the prohibition of the Immigration Law. (2) The court considered that, independently of the requirement, appellees (petitioners) had failed to show that they were merchants in the country from which they had come, and that was necessary because the law did " not contemplate that aliens who claim to belong to an exempted class, or aliens otherwise prohibited from entering the United States, shall be permitted to enter the territory of the United States to become merchants." And the court construed the partnership agreement as creating a condition or status after landing in Manila,[1] and concluded that, " There is absolutely nothing in the record which shows that the depart-

---

[1] The partnership agreement recites that it is made the " nineteenth day of September " 1919, between certain parties who are named " to be known as the capitalist partners, parties of the first part " and the petitioners and other parties, " to be known as industrial partners, parties of the second part,

" Witnesseth: That said parties have agreed, and by these presents do agree, to associate themselves as co-partners for the purpose of carrying on the business of buying and selling goods, wares, merchandise and commodities and such commission business as may appertain to the same, in the Philippine Islands to the faithful performance of which they mutually bind and engage themselves each to the other, his executors and administrators:

" 1. That the principal place of business and domicile of this co-partnership shall be Manila; or at such other place as the business

ment of customs abused its power, authority or discretion in the slightest degree."

The conclusion has pertinent signification, for counsel admit that "under the express provisions of the statute, the decision of a Board of Special Inquiry, such as that now under consideration, is final, when affirmed on administrative appeal", and only to be reviewed upon *habeas corpus* when the administrative officers have manifestly abused the power and discretion conferred upon them.

It would seem, therefore, as if something more is necessary to justify review than the basis of a dispute. The law is in administration of a policy which, while it confers a privilege, is concerned to preserve it from abuse and, therefore, has appointed officers to determine the conditions of it, and speedily determine them, and on practical considerations, not to subject them to litigious controversies, and disputable, if not finical, distinctions. Keeping in mind the admonition of this, we pass to the consideration of the rulings of the officials and the courts.

In the ruling of the Supreme Court that a "Section-Six certificate," as the court and counsel call it, is the prescribed evidence for admission under the Immigration Law, we do not concur, but in the ruling of the court that an applicant for admission as a merchant must be such at the time of his application, we do concur.

---

now conducted at said location may hereinafter be transferred by mutual consent, and this contract shall relate to this particular store and business only.

"2. That the business of this co-partnership shall be conducted under the firm name of 'Wassiamall Assomall & Co.'

"3. That the direction, control and management of this partnership is vested solely and exclusively in the parties of the first part, who are hereby granted full power and authority to appoint such manager or managers from the industrial partners as they may deem necessary or proper for the management of the store above mentioned."

The law defines the classes of aliens which shall be excluded from admission to the United States, but provides that the exclusion shall not apply to persons having the "status or occupations" of "merchants." This means, necessarily, having the "status" at the time admission is sought, not a status to come, or to be established. If the latter, what indulgence of time is to be given for its attainment, and how is detriment to the policy of the law while the status is attaining to be prevented, and how terminate the indulgence and the detriment, and execute the law? There can be no answer to those questions consistent with the denial that the status of merchant must exist at the time of application for admission.

The petitioners testified, and upon considering the testimony, we encounter some anomalies—anomalies that strain belief in its truth—certainly repel from acceptance, pretensions which are based upon the confusion of established distinctions between occupations. We have seen, the assertion is that petitioners are industrial partners, and as such Lekhraj testified he was absent from Manila over three years but was an industrial partner in the store of Wassiamall Assomall & Co., during that time—he "only took a rest." Sukhrani put his absence at sixteen months. At the time of his testimony, he said he was "a salesman" but was to become manager.

May we not wonder, in some disbelief, how a salesman or manager, whether his compensation be a salary or a percentage of profits, could have been indulged in absences of such duration?

The confounding of occupations—that of salesman or manager with that of merchant—cannot be accepted. A merchant is the owner of the business; a salesman or manager, a servant of it; and especially so under the Immigration Law. The policy of the law must be kept in mind. It is careful to distinguish between the status of a mer-

chant and those below that status. A merchant is fixed
in it and made constant to it by his financial interest, a
salesman or manager is but an employee, however else
he may be denominated, and may withdraw from his
employment at any moment of time and become a com-
petitor in the ranks of labor, using the word in the sense
the law implies. So particular is the law in regard to its
distinctions and policy that if a merchant descends from
his status he shall be " deemed to be in the United States
contrary to law, and shall be subject to deportation."
And induced, no doubt, by such consideration as well
as the distinction in occupations, the Insular officials ad-
judged that petitioners were not merchants, so adjudged
from their knowledge of the conditions obtaining in the
Philippines, so adjudged from contact with petitioners,
and in estimate of their pretensions. And, necessarily,
we should not view the spoken word, nor even the part-
nership agreement produced in support of the spoken
word, separate from that contact and that estimate. And
in accepting the adjudication, we do not share the alarm
of counsel that it will result in admitting only petty
tradesmen, in excluding " the managing partners and di-
rectors of great mercantile enterprises. We think rather
it will leave the administration of the law where the law
intends it should be left; to the attention of officers made
alert to attempts at evasion of it and instructed by experi-
ence of the fabrications which will be made to accom-
plish evasion.

Counsel themselves seem conscious of the exaggeration
which made managers and industrial partners of petition-
ers in a great enterprise, made especially such of a boy
nineteen years of age. As to him (Tulsidas), counsel say,
though asserting his right to admission, that " there is
substantial ground for a contention " that " the writ
[*habeas corpus*] should not issue because of the lack of
sufficient affirmative evidence in the record in support

of his claim that he is a merchant, and as such entitled to admission to American territory." And further, " as a newcomer to the islands, something more than his own uncorroborated statements as to his status in the country from which he came might fairly and reasonably have been required of him."

We concur with counsel as to Tulsidas and extend the requirement to the other petitioners and hold that instead, as counsel urge, of the Insular officers being obliged to seek confirmation or denial of petitioners' testimony, they, the petitioners, should have produced something more than their own statements of their status as merchants. It was for them to establish their exemption from the prohibition of the law, for them to satisfy the Insular officials charged with the administration of the law. If they left their exemption in doubt and dispute, they cannot complain of a decision against it.

*Judgment affirmed.*