## MOY CHEE CHONG v. WEEDIN, Commissioner of Immigration.

Circuit Court of Appeals, Ninth Circuit.
September 4, 1928.

No. 5448.

Fred H. Lysons, of Seattle, Wash., and Bellew, Seland, Dillon & Schendel, of Minneapolis, Minn., for appellant.

Thos. P. Revelle, U. S. Atty., and Anthony Savage, Asst. U. S. Atty., both of Seattle, Wash. (John F. Dunton, U. S. Immigration Service, of Seattle, Wash., on the brief), for appellee.

Before GILBERT, RUDKIN, and DIETRICH, Circuit Judges.

GILBERT, Circuit Judge. The appellant, who was born in China, was denied admission when he sought to enter the United States on his claim that he was the son of Moy You On. It was not denied that the alleged father was an American citizen. The ground of rejection was doubt of the alleged relationship, based upon discrepancies in the testimony. The case is here on appeal from the judgment of the court below, denying a petition for a writ of habeas corpus. In the petition it was alleged that the discrepancies were inadvertent and unimportant; that the immigration officials failed to afford opportunity to explain the same, and arbitrarily and capriciously gave the wrong construction thereto, and arbitrarily, capriciously, wrongfully, and unfairly rejected the application. The petition also brought in question the official capacity of the members of the Board of Special Inquiry, and alleged that the official oath required by law was not taken by any member of the board at any time subsequent to his designation and appointment on said board.

■ There were several discrepancies between the testimony of the appellant's alleged brother, Moy Yot Wing, given at Seattle, December 29, 1921, and the testimony of the applicant on his application for admission. Some of the discrepancies may be disregarded, as of minor importance. We find it necessary to consider but two of them:

Moy Yot Wing, who was 24 years of age, testified that he left school at the age of 20, and that he had been working in the rice fields in China ever since. The appellant, however, testified on September 21, 1927, that Moy Yot Wing came to this country as soon as he left school, and he was positive in his statement that his said brother never did any work in China. Appellant's counsel attempts to explain this discrepancy, and suggests that the fact might have been that the brother's working place was out of view of the home, or that the work was done during hours when the appellant was in school and without his knowledge, and that rice culture would occupy but about eight weeks in each year. But the appellant's testimony was that he attended the Poy Gon school for 15 or 16 years prior to coming to this country, and that Moy Yot Wing attended the same school. Counsel's explanation is far from convincing. It is not conceivable that the appellant could have been ignorant of the fact that his alleged brother had been out of school for four years before coming to the United States, and that he had been working in the rice fields.

The other discrepancy to be noted was in the testimony concerning the appellant's grandmother. The appellant testified that his paternal grandfather's wife was named Yee Shee, that she was living in his house, and that he saw her just before he left China for the United States, and that she was in the sitting room when he bade her goodby. Directly contrary to this is the testimony of the alleged father and brother, who testified in 1922 and 1921 that Yee Shee had then been dead eight or nine years, and on October 4, 1927, and November 3, 1927, at Minneapolis, Minn., they stated that she had been dead 15 or 16 years. About a month after the statements were taken at Minneapolis, the appellant was recalled before the Board of Special Inquiry, and he testified that his paternal grandfather died about 16 years before, and that his paternal grandmother Yee Shee died a short time thereafter. When confronted with his previous testimony, he stated that he had made a mistake; but he offered no explanation of the mistake. It is fairly inferable that in the meantime he had received news from Minneapolis advising him of the statements made by his alleged father and brother. The discrepancies in the two particulars just adverted to are of such importance as to justify the rejection of the appellant's application. The fact that, when testifying on September 21, 1927, the appellant, in answer to the question, "Who is living at your house at the present time?" answered, "My mother, my two nephews, my wife, and two sons," and made no mention of his grandmother, is not sufficient in itself to destroy the significance of the discrepancy.

■ As to the qualification of the members of the Board of Special Inquiry, it is shown by the records of the Seattle immigration office that each of the members was duly designated to serve on said board in compliance with section 153, 8 USCA, which provides as follows: "Boards of Special Inquiry shall be appointed by the Commissioner of Immigration or inspector in charge at the various ports of arrival, as may be necessary for the prompt determination of all cases of immigrants detained at such ports under the provisions of the law. Each board shall consist of three members, who shall be selected from such of the immigrant officials in the service as the Commissioner General of Immigration, with the approval of the Secretary of Labor, shall from time to time designate as qualified to serve on such boards."

The statute contains no provision that the members of such a board shall take an oath of office, but section 102, 8 USCA, au-

thorizes the Commissioner General of Immigration to establish such rules and regulations as he shall deem best calculated for carrying out the provisions of section 153. One of the rules so established provides: "Every person appointed to serve on a board of special inquiry shall first subscribe to an oath of office." And the immigration officials who composed the board in the present case had taken the prescribed oath that "I will use my best endeavors as a member of such board to enforce the laws of the United States relating to the admission or exclusion of certain classes of aliens, and that I will well and faithfully discharge the duties of the office mentioned."

▉ It is contended that the oath so subscribed was insufficient to authorize the members of the board to hear and pass upon the present case, and that the rule requires them to subscribe to an oath preliminary to each particular hearing before them as a Board of Special Inquiry. We find no merit in the contention. Judge Neterer rejected it in Ex parte Hing (D. C.) 22 F.(2d) 554. The provision of the statute that "regularly constituted boards may be detailed from other stations for temporary service at such port" is inconsistent with that view of the meaning of the rule. The oath prescribed is obviously an oath of office, and the rule contemplates that the immigration officials at each port, who have qualified as such, shall constitute a standing Board of Special Inquiry. Such is the construction placed upon the law by the officials whose duty it is to interpret and administer it, and that interpretation would be binding upon us, if we entertained doubt, as we do not, upon the question here involved.

The judgment is affirmed.