## UNITED STATES ex rel. SQUILLARI v. DAY, Commissioner of Immigration.

Circuit Court of Appeals, Third Circuit.
October 3, 1929.

No. 4021.

Francis A. Castellano, Jr., of New York City (Adrian Bonnelly, of Philadelphia, Pa., and John M. Lyons, of New York City, of counsel), for appellant.

Phillip Forman, U. S. Atty., of Trenton, N. J. (Anthony Giuliano, of Newark, N. J., of counsel), for appellee.

Before WOOLLEY and DAVIS, Circuit Judges, and RELLSTAB, District Judge.

DAVIS, Circuit Judge. This is an appeal from an order of the District Court dismissing a writ of habeas corpus sued out by Squillari in an effort to enter the United States temporarily.

The appellant is 24 years of age, unmarried, and a native of Italy. He arrived at the Port of New York on the steamship Republic, November 20, 1928, on a visit to his brother, sister, and brother-in-law, who reside in New York City and are American citizens. He had an Italian passport with a nonimmigrant visa issued to him by the American Vice Consul at Turin, Italy, on November 8, 1928, in accordance with section 3(2) of the Act of 1924, which provides that: "When used in this Act the term 'Immigrant' means any alien departing from any place outside of the United States [and] destined for the United States, except * * * (2) an alien visiting the United States temporarily as a tourist or temporarily for business or pleasure." 43 Stat. 154 (8 USCA § 203). He had 9,000 lire in Italian money, $60 in United States money, and a return ticket to Italy.

On his arrival he had a hearing before a Board of Special Inquiry and was asked by it why he came to the United States. He replied that he came to visit his sister and brother-in-law. On being further pressed as to why he came, he said that his father died in Italy and left some property and he came here to divide it with his sister. This further reason for his coming was untrue. His father died two years before, March, 1926, and his sister went over to Italy, received her share of her father's estate, 10,000 lire, and returned to America on October 9, 1928. This information was given by the sister, who also said that the appellant came to visit her husband and relatives.

Upon being confronted with his sister's testimony, he said that he had made a mistake and that his second reason was un-

true. Thereupon, at the conclusion of the testimony, the Board consisting of Inspectors O'Connor, Luttrell, and Parbury, took the following action:

"By Inspector O'Connor: In my opinion the alien has not established a status as a non-immigrant under Section 3(2) of the Act of 1924 (8 USCA § 203) and I therefore move to exclude him under Section 13 (a) (1) of said act, 8 USCA § 213(a)(1), as a quota immigrant not in possession of any immigration visa; also as one who admits the commission of a crime involving moral turpitude, namely, perjury before this Board.

"By Inspector Luttrell: Seconded.

"By Inspector Parbury: Unanimous."

■ The admission or exclusion of aliens into or from the United States is an administrative function of the government intrusted to the Commissioner General of Immigration. In the performance of this important function, he and the officials under him are invested with wide discretion in administering the law under the rules promulgated for its enforcement. The decision of a Board of Special Inquiry should be reviewed upon habeas corpus only when the administrative officers have manifestly abused the power and discretion conferred upon them. Tulsidas v. Insular Collector, 262 U. S. 258, 263, 43 S. Ct. 586, 67 L. Ed. 969. Courts in reviewing the acts of immigration officials, upon writs of habeas corpus, do not review the weight of evidence nor resolve conflicting testimony. United States v. Tod (C. C. A. 2) 296 F. 345, 347. Congress has prescribed the terms and conditions upon which aliens may be admitted into the United States. Whether or not an alien seeking admission has complied with these is an administrative question to be determined by the properly constituted authority after a fair hearing. Such determination is conclusive upon the courts if the hearing has been fair and the determination is not arbitrary, capricious, or wholly without evidence to support it. Chryssikos v. Commissioner of Immigration (C. C. A.) 3 F.(2d) 372; United States v. Curran (C. C. A. 3) 4 F.(2d) 356; Chin Yow v. United States, 208 U. S. 8, 12, 28 S. Ct. 201, 52 L. Ed. 369; Tang Tun v. Edsell, 223 U. S. 673, 681, 682, 32 S. Ct. 359, 56 L. Ed. 606; Low Wah Suey v. Backus, 225 U. S. 460, 468, 32 S. Ct. 734, 56 L. Ed. 1165; Zakonaite v. Wolf, 226 U. S. 272, 274, 33 S. Ct. 31, 57 L. Ed. 218; Lewis v. Frick, 233 U. S. 291, 300, 34 S. Ct. 488, 58 L. Ed. 967; Kwock Jan Fat v. White, 253 U. S. 454, 457, 40 S. Ct. 566, 64 L. Ed. 1010.

■ Admittedly the burden is upon the alien to establish proof that he is not subject to exclusion under any provision of the immigration law. Section 23 of the Act of 1924 (43 Stat. 165, 8 USCA § 221).

The real question before us is whether or not there was any evidence before the Board to sustain its conclusions.

Was there any evidence on which it could exclude the appellant on the ground that he had committed a crime involving moral turpitude?

In the first place, there is no evidence or even a hint that the appellant had committed any crime in Italy or elsewhere prior to coming to the United States. In the hearing before the Board of Special Inquiry, he first stated that he came here to visit his sister, Mrs. Olimpia Squillari Cattani, and later said that he came to settle up her portion of her father's estate with her. When it later developed through her evidence before the Board that she had recently visited Italy and just returned on October 9, 1928, he said that "it was not true" that he came to settle the estate of his father with his sister, but that he came "on a visit."

■ In excluding him because he admitted the commission of a crime involving moral turpitude, the Board doubtless referred to section 19 of the Act of February, 1917, which provides that: "Any alien who was convicted, or who admits the commission, prior or to entry, of a felony or other crime or misdemeanor involving moral turpitude * * * shall, upon the warrant of the Secretary of Labor, be taken into custody and [be] deported." 39 Stat. 889 (8 USCA § 155). The alien had not been convicted, and did not admit the commission of a crime, prior to entry. The statute in question does not contemplate such a situation as the Board was considering and furnishes no ground for its action, but relates to crimes involving moral turpitude committed somewhere and some time "prior to entry." There is therefore no evidence that he committed, or admitted the commission of a crime involving moral turpitude prior to entry, and the Board in reaching that conclusion acted wholly without evidence.

■ Was there any evidence on which the Board could find that the alien was a quota immigrant not in possession of an immigration visa as required by section 13 (a) (1) of the Act of 1924 (8 USCA § 213 (a) (1)?

The Board did not state the respect in which the appellant had failed to establish that he was not subject to exclusion. We are left to conjecture as to the particular evi-

dence upon which it based its conclusion that he was a quota immigrant without an immigration visa. In the case of United States ex rel. Alexandrovich v. Commissioner of Immigration (D. C.) 13 F.(2d) 943, the Board and court inferred that the alien intended to remain here because he had no money to support himself or pay his return passage. In the instant case, the alien had both money to support himself and a return ticket. The possession of a return ticket surely indicated an intention to return to Italy. If he had intended to remain here, he would not have purchased a return ticket, unless he had planned from the beginning a scheme to enter the country contrary to law, and there is no evidence of this. Such assumption rests upon mere suspicion and is not justified by the evidence.

The misstatement as to his object in coming to the United States simply indicates that the desire to enter the country was greater than his desire to state the exact truth. But desire to be admitted is not inconsistent with an intention to return. An inference, based on a misstatement, that he did not intend to return to his native country in accordance with the terms of his nonquota immigration visa and his return ticket, is mere assumption and not evidence. The testimony that the alien intends to return stands uncontradicted and the contrary conclusion ignores the evidence and magnifies suspicion and inference and has no real evidence to support it.

Therefore the order dismissing the writ of habeas corpus is reversed.