**CHIN WING v. NAGLE, Commissioner of Immigration.**

No. 6529.

Circuit Court of Appeals, Ninth Circuit.

Jan. 25, 1932.

Stephen M. White, of San Francisco, Cal., for appellant.

Geo. J. Hatfield, U. S. Atty., and H. A. Van Der Zee, Asst. U. S. Atty., both of San Francisco, Cal., for appellee.

Before WILBUR and SAWTELLE, Circuit Judges, and JAMES, District Judge.

SAWTELLE, Circuit Judge.

This is an appeal from an order denying a writ of habeas corpus. Chin Wing, the applicant, was denied admission to the United States on the ground that he had not satisfactorily established his relationship to his alleged father, Chin Sung, whose citizenship is conceded. The record discloses that the applicant was born in Lan On village, China, on November 5, 1911, and that the alleged father was in China at a time which makes the claimed paternity possible. In view of the fact that on approximately six different hearings or applications for admission during the past twenty years the alleged father and his two prior landed sons have consistently testified to the existence of a son named Chin Wing, it may be conceded that the alleged father has or had a son of that name. It likewise may be conceded that the applicant's testimony sufficiently establishes that he has resided in the alleged father's home village in China. However, it is contended that the applicant has failed to establish that he is the true son of the alleged father, but, on the contrary, is seeking to gain admission by impersonating the real Chin Wing.

In addition to the applicant and his alleged father, one of the prior landed sons also testified before the immigration authorities on the hearing for admission, and the testimony of the three witnesses was in substantial accord on many details concerning the family history and the names, ages, and present whereabouts of the family relatives, as well as a complete description of the family dwelling place, the date of its erection, its location in the village, and its structure, arrangement, and furnishings; likewise, as to

a description of Lan On, the home village in China, and the names and present whereabouts of many of its inhabitants or onetime residents, and many other collateral matters. We do not deem it necessary to set forth in detail the many and varied matters upon which the applicant and his supporting witnesses were interrogated. Suffice it to say, the examination covered a wide range, and, were it not for certain alleged discrepancies, hereinafter referred to, the testimony of the witnesses established the claimed relationship. The discrepancies relate to the following matters: First, the location of the burial ground where the applicant's alleged mother is interred; second, whether or not there are skylights in two of the bedrooms in the home in China; and, third, the years during which the applicant attended school.

The alleged father testified that the grave of the alleged mother is back, or south, of the village, while the applicant located it in front of the village, to the northeast. Both of the witnesses described the place as Nai Ngai Hill. The alleged father placed it 1 to 2 lis from the village, and the applicant about 1½ lis. They both agreed that the alleged mother's grave is about 75 feet from the grave of the alleged paternal grandparents, which is marked by a stone, and this monument, as well as the name appearing thereon, was described by each witness.

The applicant testified that there are double skylights in two of the bedrooms in the home, while the alleged father did not know how many skylights there were in these bedrooms, stating that he did not enter the rooms when he was last in China because they were occupied by his daughters-in-law. This matter does not seem to be urged as a discrepancy, but it is referred to by the Secretary of Labor, and was apparently relied upon by the immigration officers.

The alleged father testified that during the two years he was in China from 1920 to 1922 the applicant was attending school in the home village, and that he had been attending school at Sun Ning City for three or four years prior to his departure for this country in 1931. The alleged brother testified in 1922, in another case, that when he was in China in 1918 and 1919 the applicant was then attending school, but he did not say where. In other words, these two witnesses claim that the applicant has been attending school since he was seven or eight years of age. On the other hand, the applicant testified that he did not start going to school until 1926, when he was fifteen years

of age; that he continued in school for three or four years; that he never attended school in the home village, and that the only school he attended was the one in Sun Ning City, about thirty miles from the home village. When informed of his witnesses' testimony to the effect that he had attended a school other than the one in Sun Ning City, the applicant stated that he attended school in the home village for a few days about the year 1925, but his attention was not directed to the testimony of his witnesses that he continually attended school from the time he was about six years of age.

In connection with the testimony of Chin Tong, the prior landed brother who was examined in San Francisco in September, 1922, regarding the application for admission of Chin Fang, another brother, it may be noted that Chin Tong did not specify what school Chin Wing was attending when Chin Tong was revisiting China, between December 22, 1917, and July 16, 1919. Chin Tong merely stated that Chin Wing was "going to school."

Nevertheless, the testimony of the alleged prior landed brother and that of the alleged father definitely contradict that of the appellant, to the effect that he did not start school until he was fifteen years old ("16 years old," Chinese reckoning). Furthermore, the testimony of the alleged father, to the effect that the appellant was attending "school in the home village" during the alleged father's visit to China from 1920 to 1922, likewise definitely contradicts the appellant's testimony that he never attended the Oon Mook School in the village, and never attended any other school save that in Sun Ning City except for a few days. The alleged father testified that the Oon Mook School is the only school in Lan On village.

While other discrepancies appear in the record, we believe that the one relating to the applicant's schooling is decisive of the issue. In view of the serious contradictions as to both time and place, we cannot say that the two boards reached a conclusion that was, in the language of the late Judge Rudkin of this court, either "arbitrary" or "capricious." Go Lun v. Nagle (C. C. A.) 22 F.(2d) 246, 248.

A Chinese father, the head of his household, remaining in his home village for two years during a visit to his native land, could hardly be expected to be mistaken as to where one of his four sons was attending school during that entire period. The fourth son was born during the visit in question.

In his attempt to explain away this discrepancy, the appellant suggests that the experiences of the four sons have been "varied," and that therefore the father might well have become confused as to the details. But, from the appellant's own statement in the brief, it is apparent that the appellant is the only one of the four sons who did not attend the home village school, except for the few days that were seemingly mentioned by him as an afterthought. Surely this very difference in school experience on the appellant's part should have acted as an aid to the father's memory! A solitary exception is usually easy to remember.

 We are not holding, however, that as a matter of fact Chin Wing is not the true son of Chin Sung. We do hold, however, that the discrepancies, especially that concerning the applicant's schooling, are sufficiently serious to preclude the determination that the applicant was not given a fair hearing by the two boards or that the District Court committed error in sustaining the findings of these boards. Reasonable men might easily disagree as to the probative effect of these discrepancies. While there is possibility of such disagreement among reasonable men, the findings of administrative boards of the kind that passed upon the appellant's case will not be disturbed.

We advert also to the fact that the Board of Special Inquiry found that the "principals in this case" were occasionally "evasive." Facts of this kind can best be detected by the examining body that hears the testimony and observes the manner of the witnesses while giving it.

In Tulsidas et al. v. Insular Collector of Customs, 262 U. S. 258, 265, 43 S. Ct. 586, 588, 67 L. Ed. 969, the court said: "We think, rather, it will leave the administration of the law, where the law intends it should be left, to the attention of officers made alert to attempts at evasion of it, and instructed by experience of the fabrications which will be made to accomplish evasion."

See, also, 8 USCA §§ 153, 174; United States v. Ju Toy, 198 U. S. 253, 262, 25 S. Ct. 644, 49 L. Ed. 1040; Chin Yow v. United States, 208 U. S. 8, 11–12, 13, 28 S. Ct. 201, 52 L. Ed. 369; Tisi v. Tod, 264 U. S. 131, 133, 44 S. Ct. 260, 68 L. Ed. 590; Tang Tun v. Edsell, 223 U. S. 673, 681, 32 S. Ct. 359, 56 L. Ed. 606; Lee Lung v. Patterson, 186 U. S. 168, 176, 22 S. Ct. 795, 46 L. Ed. 1108; Ex parte Vilarino (C. C. A. 9) 50 F.(2d) 582, 586, and cases there cited.

This court has repeatedly held that discrepancies as to the applicant's schooling in cases of this kind may be fatal to the establishment of his right to enter the United States.

In Weedin v. Yip Kim Wing, 41 F.(2d) 665, 667, 668, we said:

"Appellee further states that the only school he ever attended was in the Ung On village, while the father claims that he never went to school there and always went to school in the Hong Mee village and that he was attending school there when the alleged father arrived from China in January, 1927. The appellee and the alleged father also differ as to the name of the teacher. The alleged father also testifies that the mother wrote him that the applicant had attended school in Sai How village for one year.

"In view of these discrepancies in the testimony relied upon by the applicant, we cannot say that the applicant was denied a fair hearing on the question of his right to enter the United States."

See, also, Lee How Ping v. Nagle (C. C. A.) 36 F.(2d) 582; Yee Chun v. Nagle (C. C. A.) 35 F.(2d) 839, 840; Hom Dong Wah v. Weedin (C. C. A.) 24 F.(2d) 774, 775–776; Moy Chee Chong v. Weedin (C. C. A.) 28 F.(2d) 263, 264; Weedin v. Lee Gock Coo (C. C. A.) 41 F.(2d) 129, 130.

Accordingly, in view of all the discrepancies noted above, especially that relating to the appellant's schooling, we do not think that the findings of the two boards and of the lower court should be disturbed.

Judgment affirmed.