TATSUMI MASUDA v. NAGLE, Commissioner of Immigration.

No. 6538.

Circuit Court of Appeals, Ninth Circuit.

Jan. 25, 1932.

Russell W. Cantrell and Guy C. Calden, both of San Francisco, Cal., for appellant.

Geo. J. Hatfield, U. S. Atty., and William A. O'Brien, Asst. U. S. Atty., both of San Francisco, Cal., for appellee.

Before WILBUR and SAWTELLE, Circuit Judges, and JAMES, District Judge.

SAWTELLE, Circuit Judge.

Appellant, a native of Japan, was admitted to the United States in July, 1928, as a temporary visitor for a period of six months for the purpose of inspecting the Buddhist Sunday schools in this country. He entered as a nonimmigrant under the provisions of section 3 (2) of the Immigration Act of 1924, which provides:

"Sec. 3. When used in this Act the term 'immigrant' means any alien departing from any place outside of the United States destined for the United States, except  *  *  * (2) an alien visiting the United States temporarily as a tourist or temporarily for business or pleasure." 8 USCA § 203 (2).

In March, 1929, two months after the temporary admission period had expired, appellant became employed as a bookkeeper by one Inouye, a treaty trader engaged in an importing and exporting business at Sacramento, Cal., and two months thereafter, or May 1, 1929, he became the manager of this business. In November, 1930, appellant was ordered deported on the ground that he had remained in this country for a period longer than that permitted under the Immigration Act of 1924, or regulations made thereunder. Section 14 of the act provides for deportation, as follows:

"Sec. 14. Any alien who at any time after entering the United States is found to have  *  *  * remained therein for a longer time than permitted under this subchapter or regulations made thereunder, shall be taken into custody and deported.  *  *  *" 8 USCA § 214.

Thereupon appellant applied for a writ of habeas corpus on the ground that he was entitled to remain in this country as a treaty trader under section 3 (6) of the Immigration Act and by virtue of the provisions of the Treaty of Commerce and Navigation entered into between the United States and Japan, February 21, 1911 (37 Stat. 1504). From a denial of the petition for a writ of habeas corpus, this appeal was prosecuted.

Section 3 (6) of the act is as follows:

"Sec. 3. When used in this Act the term 'immigrant' means any alien departing from any place outside the United States destined for the United States, except  *  *  * (6) an alien entitled to enter the United States solely to carry on trade under and in pursuance of the provisions of a present existing

treaty of commerce and navigation." 8 US CA § 203 (6).

■ Appellant's contention is this: Having been lawfully admitted to the United States temporarily as' a nonimmigrant, under the tourist section of the act, section 3 (2), he had a right to change his status to that of a treaty trader and remain here indefinitely under section 3 (6), so long as he continues to maintain his status as such a nonimmigrant.

But appellant's argument is untenable, because at the time he changed, or attempted to change, his status he was unlawfully present in this country and subject to deportation by reason of having overstayed the period for which he was admitted. After the temporary admission period had expired, appellant's stay in the United States became unlawful.

■ In Ng Fung Ho et al. v. White, 259 U. S. 276, 281, 42 S. Ct. 492, 494, 66 L. Ed. 938, the Supreme Court said: "Unlawful remaining of an alien in the United States is an offense distinct in its nature from unlawful entry into the United States. One who has entered lawfully may remain unlawfully."

. In Ewing Yuen v. Johnson (D. C.), 299 F. 604, 606, it was said:

"He applied for and obtained temporary admission under the immigration laws as an alien otherwise inadmissible. He entered into a solemn obligation with the authorities representing the United States government to depart within six months. At the expiration of that period his stay within the United States was unlawful. * * *

"He is not helped by the fact that since coming to the United States he has acquired the status of a merchant."

■ It is well settled that an alien gains no rights by entering upon an exempt occupation while unlawfully in the United States. See Ewing Yuen v. Johnson, supra; In re Low Yin (D. C.) 13 F.(2d) 265, 266; Wong Gar Wah v. Carr (C. C. A. 9) 18 F.(2d) 250, 251; Kaichiro Sugimoto v. Nagle (C. C. A. 9), 38 F.(2d) 207, 209, certiorari denied 281 U. S. 745, 50 S. Ct. 351, 74 L. Ed. 1158.

■ Appellant's right to admission to the United States is governed by the Immigration Act of 1924 and not by the Treaty of 1911. In Jeu Jo Wan v. Nagle, 9 F.(2d) 309, 310, this court said:

"It will thus be seen that the Immigration Act of 1924 abrogates all laws, conventions, and treaties relating to the immigration, exclusion, or expulsion of aliens, inconsistent with its provisions, and that the only treaty rights preserved are those relating to aliens entitled to enter the United States solely to carry on trade under and in pursuance of the provisions of a present existing treaty of commerce and navigation."

We do not agree with appellant's contention that this case is governed by the first opinion of this court in Metaxis v. Weedin, where we held that, inasmuch as Metaxis had entered the country lawfully, under the provisions of a treaty between the United States and Greece, his subsequent change of status from a nonimmigrant visitor to a treaty trader, before the expiration of his temporary admission period, was not unlawful and that he was entitled to remain here. On rehearing our attention was called to the fact that the treaty with Greece had been abrogated, and we therefore reversed our prior decision and held that he should be deported. 44 F.(2d) 539.

The Metaxis Case can be distinguished from the present proceedings both on the law and on the facts. Metaxis entered the United States on February 11, 1924, while the Immigration Act we must here apply went into effect on May 26, 1924. Accordingly, in the Metaxis Case, this court was expressly construing the Quota Act of 1921. In that case we used the following language:

"Here, however, his entry was legal, and his change of status made in good faith. No law has been violated by his change, but he did agree to leave within six months, and that period has expired. The Secretary of Labor, however, is not empowered to enforce such an agreement by deportation. This power to deport aliens is based upon sec. 19 of the Immigration Law of 1917 (39 Stat. 874 [8 USCA § 155]) * * *"

Under the Immigration Law of 1924, however, the Secretary of Labor, as we have seen, is empowered to deport an alien who has remained in the United States "for a longer period than permitted under this Act, or regulations made thereunder."

As to the facts, this court, as noted above, found in the Metaxis Case that the alien had changed in his status in good faith. We cannot make the same finding in the instant case. The appellant, apparently a person of intelligence and education, knew or should have known that he was breaking faith with the government when he overstayed his time.

Furthermore, we find the following in the record:

"Question: Did you understand that it would be unlawful for you to engage in any employment in view of the fact that you had been admitted to the United States as a visitor? Answer: Yes, I knew it was unlawful."

Finally, the first opinion in the Metaxis Case set forth that:

"Immediately after his admission he went to Seattle, Wash., and joined his brother and there formed a partnership with him in the grocery business, which was later discontinued. Thereafter he entered into an agreement for the purchase of the controlling interest in the Quality Food Market. ＊ ＊ ＊ He now devotes his entire time to the interests of said corporation, which deals in groceries and imported products.

"In August, 1924, upon his application, the term of his stay was extended six months upon condition that he furnish bond in the sum of $500 guaranteeing that he would depart from the United States before the expiration of said extension period. The bond was not furnished. ＊ ＊ ＊"

In the instant case, the change of status was made while, as we have seen, the appellant was unlawfully within the United States.

Section 14 of the Immigration Act of 1924 (8 USCA § 214) provides that an alien who remains in the United States for a longer time than that permitted by the act shall be deported. Appellant contends that the intent of Congress in enacting section 14 was to prevent an alien from changing his temporary status as a nonimmigrant, under which he was admitted, to that of a permanent resident, and that this section does not prevent a nonimmigrant lawfully admitted under one of the six classifications in section 3 of the act from shifting or changing his status to a different classification or subdivision of section 3. In support of this argument, appellant relies on the case of Dang Foo v. Day, 50 F. (2d) 116, 119, where it was held by the Circuit Court of Appeals for the Second Circuit that a Chinese who had entered this country under a traveler's certificate, which contained no limitation of time, was entitled thereafter to change his status to that of a treaty merchant and remain here. The court there said:

"There was nothing to forbid his changing his status to that of a merchant. Nonimmigrants, by the plain language of the statute, are entirely outside the general purposes of the law establishing quotas for immigrants, and there was nothing to forbid a member of any one of the six non-immigrant classes to become a member of any other one of such six classes. He came as a traveler or visitor, which kept him out of the general purposes and scope of the quota law, and, after being admitted as a traveler, he became a merchant, and in doing this remained as a non-immigrant, and was still without the scope of the quota law."

It must be noticed, however, that the Circuit Court also observed: "No period of his allowed stay was fixed at the time of his admission by either court or the immigration officials."

Nor was it shown that Dang Foo's change of status took place while he was unlawfully in the United States. Accordingly, we believe that it is possible to distinguish that case from the instant proceedings.

■ In any event, we are bound by the doctrine laid down by the Supreme Court in Tulsidas v. Insular Collector, 262 U. S. 258, 264, 43 S. Ct. 586, 588, 67 L. Ed. 969:

"The law defines the classes of aliens which shall be excluded from admission to the United States, but provides that the exclusion shall not apply to persons having the 'status or occupations' of 'merchants.' This means, necessarily, having the 'status' at the time admission is sought, not a status to come, or to be established. If the latter, what indulgence of time is to be given for its attainment, and how is detriment to the policy of the law while the status is attaining to be prevented, and how terminate the indulgence and the detriment, and execute the law? There can be no answer to those questions consistent with the denial that the status of merchant must exist at the time of application for admission."

Appellant did not claim the status of a merchant at the time of his entry.

The judgment is affirmed.