**WARD, Com'r of Immigration, v. FLYNN ex rel. YEE GIM LUNG.**

**No. 2938.**

Circuit Court of Appeals, First Circuit.

Dec. 1, 1934.

Arthur J. B. Cartier, Asst. U. S. Atty., of Boston, Mass. (Francis J. W. Ford, U. S. Atty., of Boston, Mass., on the brief), for appellant.

Walter Bates Farr, of Boston, Mass. (Everett Flint Damon, of Boston, Mass., on the brief), for appellee.

Before BINGHAM, WILSON, and MORTON, Circuit Judges.

MORTON, Circuit Judge.

This is an appeal by the Commissioner of Immigration from a decree of the District Court in habeas corpus proceedings which held, in effect, that Yee Gim Lung, who will be referred to as the petitioner, had so clearly established his status as an American citizen and his right to enter this country that the denial of his claim by the immigration tribunals was arbitrary and unfair; and the court accordingly discharged the petitioner. It was conceded by the immigration tribunals that the American citizenship of the alleged father was established.

The only question in dispute was the alleged relationship. The evidence on this point was given by the applicant, by his alleged father, and by an alleged older brother who was admitted in 1931. All of them testified that the applicant was the son of Yee Hop and was born in the village of Bow Ben, China, in December, 1911, a few months after his father had left there to return to this country. The alleged father testified that he was informed of the applicant's birth by a letter from his wife written a few months afterwards, and that he had never seen him until he arrived here on the present occa-

sion. Naturally he knew very little about the applicant. The main witness for the applicant was his alleged older brother. Both of them were examined at great length and with much detail as to their home, family, village, and surroundings in China. While on a few points their testimony was not in strict accord, they agreed so closely on such a multitude of details as to leave no room for doubt that both were talking about the same village and people. In the proceedings in connection with the admittance of the older brother, Yee Shong Loong, in 1931, the present applicant was referred to by the older brother and by the alleged father as a younger brother then living in China; and an apparently disinterested witness testified that he had seen the applicant at the family home there in 1926.

The essence of the decision by the immigration tribunals is that the evidence for the applicant shows sufficient indications of being a fabricated conspiracy to warrant rejecting his claim. If so, the conspiracy must have been formed as early as 1931 and have been participated in by the witnesses in the brother's case. The only substantial piece of evidence impeaching the applicant's case was a statement made by the alleged father in an official proceeding relating to another person, not a member of his family, in 1913, when, according to the department record, he testified that he had only one son. At that time the applicant would have been about one and one-half years old, and the father, according to his testimony, was well aware that he had two sons. The point had no relevancy whatever to the matter then in hearing. No importance was placed on it at that time. There is only a single question and answer relating to it in the record. The testimony of the older brother and of the disinterested witness in the brother's case stand unimpeached.

The law on this subject is familiar, and it is unnecessary to cite authorities. Tribunals which undertake to ascertain facts must proceed on evidence or on the personal knowledge of their members. They have no other way of getting at the truth. Of course, they are not obliged to accept every statement which is sworn to or to disregard inherent improbability; tribunals of administrative character may get at the facts in any way they see fit within the bounds of reason and fairness. Where the proceedings are of a sort in which deception and fabrication are often attempted, a suspicious attitude towards them is not unreasonable. But,

to reject sworn, consistent, unimpeached, and uncontradicted testimony, there must be a real reason which would be regarded as adequate by fair-minded persons. The single statement of the alleged father, appearing in a record made many years ago through an interpreter, and perhaps mistakenly taken down, concerning a matter not at that time in issue, which is in variance with his later testimony in both this and an intermediate proceeding and with the testimony of three other witnesses, one of them apparently disinterested, does not seem to us to be sufficient ground for a fair-minded person to conclude that the case is fabricated and fraudulent. The decisions relied on by the government were made on facts much stronger against the testimony offered than those in the present case.

The decree of the District Court is affirmed.

WILSON, Circuit Judge (dissenting).

I find myself unable to agree to the opinion of my colleagues. The only issue, as I understand the law relating to these exclusion cases, is whether the boards of special inquiry and review gave the applicant a fair hearing, and did not abuse the discretionary powers vested in them. The courts do not weigh the evidence pro and con. If there is evidence on which the refusal of admission is based, its weight is for the administrative officials. That this court would have arrived at a different conclusion is of no consequence. Neither the district courts in habeas corpus proceedings nor the appellate courts see the witnesses. How they may have impressed the boards of special inquiry and review we do not know.

It is not the function of an appellate court in a habeas corpus proceeding to weigh the evidence, or to go into the sufficiency of the probative facts, if there are such. Under the provisions of the statute, the decision of boards of special inquiry and review is final, unless reversed on appeal to the Secretary of Labor. It is only to be reviewed on habeas corpus when the administrative officers have manifestly abused the power and discretion conferred upon them. White v. Young Yen (C. C. A.) 278 F. 619; Low Wah Suey v. Backus, 225 U. S. 460, 468, 32 S. Ct. 734, 56 L. Ed. 1165; Zakonaite v. Wolf, 226 U. S. 272, 274, 33 S. Ct. 31, 57 L. Ed. 218; Lewis v. Frick, 233 U. S. 291, 300, 34 S. Ct. 488, 58 L. Ed. 967; Kwock Jan Fat v. White, 253 U. S. 454, 457, 40 S. Ct. 566, 64 L. Ed. 1010; Tulsidas v. Insular

Collector, 262 U. S. 258, 263, 43 S. Ct. 586, 588, 67 L. Ed. 969; Tisi v. Tod, 264 U. S. 131, 133, 44 S. Ct. 260, 68 L. Ed. 590; Louie Lung Gooey v. Nagle (C. C. A.) 49 F.(2d) 1016; Fong Kong v. Nagle (C. C. A.) 57 F.(2d) 138.

As the court said in Tulsidas v. Insular Collector, supra: It leaves "the administration of the law, where the law intends it should be left, to the attention of officers made alert to attempts at evasion of it, and instructed by experience of the fabrications which will be made to accomplish evasion." Also see Chin Ching v. Nagle (C. C. A.) 51 F.(2d) 64.

At the hearing before the immigration authorities, the alleged father and the alleged brother, Yee Shong Loong, testified in behalf of the applicant and supported his claim.

The boards of special inquiry and review in this case based their order of exclusion upon certain discrepancies in the testimony of the applicant and his brother relating to matters of such recent occurrence that the boards evidently thought it was reasonable to expect they should have been in substantial accord, but more particularly on the statement of the alleged father in 1913, although the applicant was then nearly two years old, that he had only one son, naming as his only son, Yee Shong Loong, who admitted as his son in 1931.

The chief discrepancies in the testimony of the applicant and his alleged brother related to the arrangements of the schoolhouse which they claimed to have attended for ten years or more, and the period of time which had elapsed before the older brother left for this country after leaving school, when the young men were at least eighteen and nineteen years of age, and only a few years had elapsed since they left school.

These and other discrepancies as to the ages of certain relatives and circumstances connected with their families alone might or might not have weighed heavily in the minds of the boards; but it is inconceivable that a fond father should state that he had but one son within two years after the birth of this applicant, with whom he says he knew that his wife was pregnant when he left China in 1911, and of whose birth and name he had already been notified by her. That the number of his children was not in issue at the time may have made it even stronger evidence that he was then telling the truth. The boards may have accepted his statement made at a time when he had no motive for telling anything but the truth, and which in the minds of the boards may have outweighed the evidence of the admitted son and another witness made nearly twenty years later at the time of his admission, and about two years previous to the petitioner's application, when a conspiracy to enable this applicant unlawfully to enter this country may already have been in contemplation. No explanation of the statement of the alleged father in 1913 is made, except the stereotyped one of "I don't know why I said that;" or, "I don't know why he said that." While the father stated that he had received letters from time to time from his wife mentioning this applicant by name, no such letters were offered.

I do not think on this evidence the board of special inquiry or the board of review can be said to have acted so arbitrarily as to have abused their discretionary powers. The applicant was given a full hearing. It was an inadvertence, of course, that the District Court supported its order by so many cases which had been overruled.