## Petition of WONG SIE LIM.
### No. 8515-M.

District Court, N. D. California, S. D.
March 3, 1947.

Lloyd H. Garner, Naturalization Examiner, of San Francisco, Cal., for the United States.

Kenneth Y. Fung, of San Francisco, Cal., for petitioner.

G. C. Ringole and Walter E. Hettman, both of San Francisco, Cal., amici curiæ for petitioner.

GOODMAN, District Judge.

The petitioner, Wong Sie Lim, is a 22 year old male native of China, who seeks citizenship under the special provisions of Section 701 of the Nationality Act of 1940 as amended, 8 U.S.C.A. § 1001. The petitioner first entered the United States illegally on April 19, 1942. He was subsequently apprehended by the Immigration Officers and on July 16, 1943, was ordered deported from the United States. However, due to war time conditions the government permitted petitioner to remain, under bond, in the United States. During that period and on August 28, 1944, he was inducted into the United States Army. On December 19, 1944, he was discharged from the army. Such duties as he performed during the period of approximately three and one half months of service in the army, were wholly within the continental United States. On May 2, 1945, he was deported from the United States. Subsequently, and on December 3, 1945, he was lawfully admitted for permanent residence. By his petition now before the Court, he seeks the benefits of Section 701 as amended by the Act of Dec. 22, 1944, c. 662, Sec. 1, 58 Stat. 886, 8 U.S.C.A. § 1001. The amended section reads as follows:

"Notwithstanding the provisions of sections 703 and 726 of this title, any person not a citizen, regardless of age, who has served or hereafter serves honorably in the military or naval forces of the United States during the present war and who shall have been at the time of his enlistment or induction a resident thereof and who (a) was lawfully admitted into the United States, including its Territories and possessions, *or* (b) having entered the United States, including its Territories and possessions, prior to September 1, 1943, being unable to establish lawful admission into the United States serves honorably in such forces beyond the continental limits of the United States or has so served may be naturalized upon compliance with all the requirements of the naturalization laws except (1) no declaration of intention, no certificate of arrival that for those described in group (b) hereof, and no period of residence within the United States or any State shall be required * * *." (Italics supplied.)

Petitioner contends that, having now (since his discharge from the army and subsequent deportation) been lawfully admitted to the United States for permanent residence, he is eligible for citizenship, despite the fact that his approximate three and one-half months service in the United States Army was in continental United States and not overseas. In this contention he is supported by the Naturalization Service, through the designated Examiner, which means that the Commissioner of Naturalization and Immigration recommends his naturalization. The petitioner and the Commissioner both urge that there is ambiguity in Section 701 and that the Commissioner, pursuant to the authority of 8 U.S.C.A. § 727, has adopted an amendment to Regulation 338.1, 10 F.R. 2156, effective February 21, 1945, approved by the Attorney General[1] interpreting the statute in such a way as to resolve the alleged ambiguity in favor of petitioner's admission to citizenship. The rationale of the Commissioner's interpretation is that petitioner's recent lawful entry suffices to justify naturalization, despite his illegal presence in the United States at the time of induction and even though his military service was entirely in continental United States.

The argument made by both petitioner and the Commissioner is that the change in the language of section 701 effected by the amendment of 1944[2] is persuasive of Congressional intent to permit the admission to citizenship of aliens serving in the armed forces, who illegally entered the United States prior to military service, providing such illegality is corrected by subsequent lawful admission, and this irrespective of whether or not such service in the armed forces was in continental United States or overseas. An interpretation of the statutory language, it is contended, is too technical if it results in the exclusion from citizenship of aliens, illegally present in the United States, who served in the armed forces, so long as the illegality is cured by lawful entry prior to the filing of the petition for naturalization. Particularly is this so, it is asserted, because of a clearly expressed desire of the Congress to short-cut the admission to citizenship of aliens who fought for this country. The Commissioner urges that the court should be liberal in its interpretation of the language of this statute to effectuate such purpose.

■ It is true that consideration should be given to the construction of statutory language placed thereon by those entrusted by law with executive and administrative functions and particularly so in cases where the statute authorizes the promulgation of regulations by the officer who is to execute the statute. Jacobs v. Prichard, 223 U.S. 200, 32 S.Ct. 289, 56 L.Ed. 405; United States v. Cerecedo, 209 U.S. 337, 28 S.Ct. 532, 52 L.Ed. 821; Moy Chee Chong v. Weedin, 28 F.2d 263. But I fail to find in regulation 338.1[3] any interpretative clari-

---

[1] F.R.Doc. 45-2887; Filed, Feb. 21, 1945; 3:30 p.m.

[2] Prior to 1944 and as originally enacted in 1942, section 701, provided as follows:

"Sec. 701. Notwithstanding the provisions of sections 303 and 326 of this Act [Title 8, §§ 703, 726], any person not a citizen, regardless of age, who has served or hereafter serves honorably in the military or naval forces of the United States during the present war and who, *having been lawfully admitted to the United States*, including its Territories and possessions, shall have been at the time of his enlistment or induction a resident thereof, may be naturalized upon compliance with all the requirements of the naturalization laws except that (1) no declaration of intention and no period of residence within the United States or any State shall be required; * * * *"

[3] § 338.1 Persons eligible. Any person not a citizen of the United States, regardless of age, who is serving or has served honorably in the military or naval forces of the United States during the Second World War and who was at the time of his enlistment or induction a resident of the United States, its Territories, or possessions and who (a) has been lawfully admitted into the United States, including its Territories and possessions, or (b) having entered the United States, including its Territories and possessions, prior to September 1, 1943, serves honorably in such forces beyond the continental limits of the United States or has so served, may be naturalized under the provisions of section 701, of the Nationality Act of 1940, as amended, upon his petition filed not later

50 U.S.C.A.Appendix, § 640. (Emphasis supplied.)

fication of legislative intent in favor of naturalizing aliens illegally here at the time of their entry into military service, absent service overseas.

Moreover, it should be emphasized that an administrative officer has a clear duty to execute Congressional mandates without any effort on his part to extend statutory benefits and privileges because he thinks it might be a liberal or praiseworthy course of action and no matter how well intentioned he may be.

I am of the opinion that both the regulation so promulgated by the Commissioner (conceding that it does clarify the words of the statute) and his interpretation of the statutory language is completely without warrant or justification in view of the clear lesson taught by the legislative history of the statute in question.[4]

After the United States entered World War II, Congress proceeded to a consideration of the nature and extent of citizenship benefits to be conferred upon aliens serving in the armed forces. The first legislation on this subject was contained in the Second War Powers Bill to expedite the war effort, introduced in the Senate by Senator Van Nuys on January 16, 1942, 88 Cong.Rec. 431. As introduced its provisions were applicable to all aliens with honorable service in the armed forces.[5] Thereafter, committee investigations and hearings were had. The matter was debated in both Senate and House, the chief controversial feature of the proposed legislation being the extension of its provisions to non-resident aliens. Amendments were proposed and conferences were had between Senate and House Committees. Finally there eventuated on March 27, 1942 Title X of the Second War Powers Act, 56 Stat. 182, 50 U.S.C.A.Appendix, § 640, amending the Nationality Act of 1940 by adding Sec. 701 thereto,[6] which in effect relieved those who served in the armed forces of the United States *who had been lawfully admitted to the United States and were residents thereof at the time of their induction or enlistment,* from many of the requirements which applied to civilian applicants for citizenship.[7]

After a year of war following the enactment of Section 701, Congress, heeding the recommendations of the War Department, the American Legion and the Department of Justice, gave consideration to the further relaxation of naturalization re-

---

than one year after the termination of the effective period of the Second War Powers Act, 1942, as amended, prescribed in section 1501 of that Act [50 U.S.C.A. Appendix, § 645] (58 Stat. 886 [8 U.S. C.A. § 1001]). * * *

[4] In Ex parte Fillibertie et al., D.C., 62 F.Supp. 744, the Court was of the view that the statutory language, with which we are here concerned, was so clear and unambiguous against the Commissioner's interpretation that it did not feel itself compelled to make an examination of the Congressional proceedings to ascertain legislative intent. A thorough examination of the Congressional Proceedings, however, sets the matter completely at rest.

[5] See explanatory statements of Mr. O'Mahoney, Chairman of Senate Judiciary Committee, 88 Cong.Rec. 663.

[6] See Note (2) 71 F.Supp. page 85.

[7] The chronology of the congressional proceedings in the 77th Congress, 2nd session is as follows:

1942
Jan. 16   Senate Bill 2208 introduced by Senator Van Nuys
          and referred to Judiciary Committee          88 Cong.Rec.   431
Jan. 22   Bill reported with amendments                88 Cong.Rec.   539
Jan. 24   Debated in Senate                       88 Cong.Rec.  653 et seq.
Jan. 28   Amended and passed Senate                    88 Cong.Rec.   815
Jan. 29   Referred to House Judiciary Com.             88 Cong.Rec.   896
Feb.  9   Reported with amendments                     88 Cong.Rec.  1197
Feb. 24, 25, 28 Debated in House                       88 Cong.Rec.  1620
                                                          et seq.
Feb. 28   Passed House with amendments                 88 Cong.Rec.  1857
Mar. 2    Senate disagrees with House amendments; conferees
          appointed                                    88 Cong.Rec.  1893
Mar.  3   House Conferees appointed                     88 Cong.Rec.  1986
Mar. 12   Conference report filed                      88 Cong.Rec.  2447
Mar. 27 Bill adopted

strictions as to those serving in the armed forces. A further bill was introduced in Congress January 19, 1943 designed to remove substantially all barriers to naturalization of aliens entering the armed forces in the United States, its Territories or possessions, and to admit to citizenship all such aliens of good moral character who served honorably in the armed forces, without regard to their ability to show lawful entry. However, after further congressional debate, on December 22, 1944, Section 701 of the Nationality Act of 1940 was amended, 58 Stat. 886, 8 U.S.C.A. § 1001, with the limitations as hereinbefore set out. When the bill as it finally came out of the Senate Committee on Immigration and Naturalization reached the Senate on December 14, 1944, 90th Cong.Rec. 9566, Senator Burton (now Mr. Justice Burton) in presenting the report of the committee recommending the passage of the bill in the form in which it was adopted, inter alia, stated:

*"When the bill passed the House it was in a broad form but when acted upon by the Committee on Immigration two amendments were inserted.* One limited the measure to those who entered the service of the United States and began to reside here prior to September 1, 1943, so as to avoid its being made use of as an escape from immigration procedures in the future, but to cover those features where there had been some irregularities which could not otherwise be met. *The other limited the measure to cases overseas, it being felt that those were the cases where the need would arise and where the soldiers would be put in jeopardy, whereas as long as they were in the United States they could follow the normal procedure."* (Emphasis supplied.)

When the bill reached the House on December 15, 1944, 90 Cong.Rec. 9681, Representative Allen of Louisiana in presenting the committee report to the House stated:

"The Senate restricted the House bill by making the benefits of this bill apply only to those who came here after September 1, 1943, *and only to those who are serving outside the continental United States."* (Emphasis supplied.)[8]

■ The intent of Congress is crystal clear. The benefits which petitioner in this case seeks to obtain were specifically limited by Congress to those in the armed forces serving *outside continental United States.* As to those aliens serving in continental United States, Congress by the 1944 Amendment to sec. 701 intended making no change in those requirements specified in section 701 as originally enacted in 1942. Consequently an alien serving in the armed forces who illegally entered the United States and was not therefore a lawful resident at the time of his induction or enlistment in the armed forces, cannot have the benefits of this section of the law, unless he performed military services outside the continental limits of the United States. To hold otherwise, as recommended by the Commissioner, would be to judicially legislate.

■ Furthermore, it must be kept in mind that the amendments to the Nationality Act of 1940 were in furtherance of the war effort. The traditional naturalization requirements were lessened only as to those in the armed forces and only to the specific extent prescribed by the Congress, after long and thorough discussion and consideration. It is still an historic pre-

---

[8] The chronology of Congressional proceedings in the 78th Cong. 1st session is as follows:

1943
Jan. 19. Bill introduced in House by Mr. Dickstein and referred to Immigration and Naturalization Com.     89 Cong.Rec.  255
Feb. 24  Reported without amendment     89 Cong.Rec. 1317
Mar. 15  Debated in House     89 Cong.Rec. 2027 et seq.
Apr.  5  Passed House     89 Cong.Rec. 2955
Apr.  6  Referred to Senate Com. on I. & N.     89 Cong.Rec. 2997
1944
Nov. 29  Reported by Senate Com. with amendments     90 Cong.Rec. 8661
Dec. 14  Debated in Senate     90 Cong.Rec. 9566
Dec. 15  House concurs in Senate Amendment     90 Cong.Rec. 9681
Dec. 22  Bill becomes effective

cept of our scheme of naturalization that "statutes prescribing qualifications and governing procedure for .admission are to be construed with definite purpose to favor and support the government. And, in order to safeguard against admission of those who are unworthy, *or who for any reason fail to measure up to required standards,* the law puts the burden upon every applicant to show by satisfactory evidence that he has the specified qualifications." United States v. Schwimmer, 279 U.S. 644, at page 649, 49 S.Ct. 448, 449, 73 L.Ed. 889; Tutun v. United States, 270 U.S. 588, 46 S.Ct. 425, 70 L.Ed. 738; United States v. Macintosh 283 U.S. 605, 51 S.Ct. 570, 75 L.Ed. 1302; In re Laws, D.C., 59 F.Supp. 179; Petition of Sam Hoo, D.C., 63 F.Supp. 439. (Emphasis supplied.)

This case does not call for a *liberal* statutory interpretation as is impliedly urged by petitioner and Commissioner. We are not here dealing with remedial legislation where technical construction is avoided and the curing of social and economic mischiefs bespeaks liberality. No man may be admitted as a citizen of the United States unless he satisfies all requirements of the statute, be he a soldier or a civilian.

In Petition of Agustin, D.C., 62 F.Supp. 832, and In re Delgado, D.C., 57 F.Supp. 460, it is true that I stressed that the conditions precedent to the bestowal of citizenship upon aliens in our military services should not be "formalistic technicalities." But these cases are not apposite. In the Agustin case the question was whether Petitioner who actually fought in our armed forces and was *otherwise qualified* had to show that he had complied with the formalities of an induction ceremony. In the Delgado case the question presented was whether a "temporary member" of the Coast Guard, *otherwise qualified,* was a member of our military forces.

The petitioner in this case does not meet the requirements which the Congress has seen fit to impose and therefore his petition is denied.

It may be well to add that the denial of this petition in no way prevents the eventual naturalization of the petitioner. He may still pursue the normal procedure and in due time become a citizen, upon his compliance with the applicable conditions of the naturalization process. He may not, however, take the short-cut provided by Sec. 701 of the Nationality Act.