### In re KULLMAN.

No. 12543.

United States District Court
W. D. Missouri, W. D.

Dec. 31, 1949.

Popham, Thompson, Popham, Mandel & Trusty, Kansas City, Mo., Attorney for petitioner.

Clifford J. Long, Naturalization Examiner, for the Department of Immigration and Naturalization.

REEVES, Chief Judge.

The only question for decision in this case is whether the petitioner or applicant is "attached to the principles of the Constitution of the United States, and well disposed to the good order and happiness of the United States."

No question is raised but that the applicant fully meets the requirements of Section 707, Title 8 U.S.C.A., as to residence and good moral character.

After the petition for naturalization had been filed and upon final hearing thereof, the government, through its proper officers, interposed an objection to the admission of the petitioner to citizenship upon the sole ground that, as stated, petitioner was not "attached to the principles of the Constitution of the United States, etc."

In accordance with section 734, Title 8 U.S.C.A., the petitioner asked for and was granted a hearing upon his application for citizenship. At such hearing the petitioner as well as the government produced witnesses whose testimony was confined or limited to the question of his attachment to the principles of the Constitution. Seventeen witnesses for the petitioner testified that he was so attached to the principles of the Constitution and in their judgment would make a good citizen. On behalf of the government nine witnesses were called in opposition to his admission. All of the witnesses for the government, however, did not oppose his admission and neither did they assign reasons why he should not be admitted. In fact, one of the government's chief witnesses gave testimony voluntarily supporting the petitioner, and succinctly expressed the opinion that "he would make a good citizen." This witness was a partner in business of the government's chief witness.

An examination of the testimony of the seventeen witnesses for the petitioner reveals that each one was acquainted with the petitioner and had had opportunities to observe his conduct and to hear his expressions concerning the United States and

his attitude toward the Constitution and the government. Without exception they said he was favorable to the government and that on no occasion had they heard any statement adverse to the government.

Those of the nine witnesses who testified against the petitioner were admittedly hostile because of unpleasant business relationships. It appeared from their testimony that the petitioner was excitable and, as one of them said, sometimes radical in his views. The statements of the petitioner upon which they based their opinion that he would not be a good citizen were to the effect that Hitler had effected a strong organization in Germany and had acquired leadership over the young men. These statements were made before America became involved in the war. Near the end of the war he had said that the German people would not give up easily and that he did not believe Hitler was dead.

As against this, other witnesses had said that he expressed himself as much pleased when victory was won over the German nation. In his own behalf the petitioner testified that he came to this country in 1911, when he was 21 years of age. He entered one of our state universities, spent many years as a student, acquired some distinguishing marks of credit as a chemist and as a pharmaceutical graduate. He became a member of scholastic fraternities and for many years was the employed chemist of an industrial organization.

In the first world war he was not averse to bearing arms and extended aid in the organization and drilling of our armed forces.

Heretofore he had filed an application for citizenship but on the advice of friends had withdrawn same. He had not pressed earlier applications for the reason that his employment had made his residence uncertain. Since his arrival in the United States, in 1911, he has been identified with our schools and business and has continuously resided in the United States.

As indicated, only one or two hostile witnesses testified as a conclusion that he was not attached to the principles of the Constitution of the United States.

■ 1. Sections 734 and 735, Title 8 U.S.C.A. prescribe the qualifications for admission to citizenship, and the oath of renunciation and of allegiance is a condition precedent for admission to citizenship.

■ 2. As hereinbefore stated, the petitioner is admittedly qualified as to every requirement save only that it is denied that he is attached to the principles of the Constitution. Upon this question of course the burden of proof is upon the petitioner. In re Wright, D.C., 42 F.Supp. 306; In re Zele, 2 Cir., 127 F.2d 578; In re Wong Sie Lim, D.C., 71 F.Supp. 84. And that he has an undivided loyalty, Luria v. United States, 231 U.S. 9, loc. cit. 23, 34 S.Ct. 10, 58 L.Ed. 101.

■ 3. It is the further rule that in case of doubt as to the qualifications of an applicant the same should be resolved in favor of the government. United States v. Schwimmer, 279 U.S. 644, 49 S.Ct. 448, 73 L.Ed. 889.

■ 4. However, the court has a wide discretion on hearing a petition for naturalization. This discretion cannot be exercised arbitrarily nor in a manner which adds to the requirements contained in the act, as the act must be liberally construed in favor of the petitioner. Tutun v. United States, 1 Cir., 12 F.2d 763, loc. cit. 765.

5. With the foregoing as postulates, it should now be determined whether the applicant in this case fully meets the requirements of law so as to entitle him to be admitted to citizenship.

As indicated, seventeen citizens who were well acquainted with the applicant and had abundant opportunities to become familiar with his attitude toward the government quite forcefully and definitely said that he was not adverse, nor hostile to the United States, but, on the contrary, was favorable to it and that all of his expressions indicated an attachment to the principles of the Constitution, within the purview of the law.

■ Adverse witnesses base their conclusions upon the fact that the petitioner is a man of strong feelings and is a native German. One of the chief witnesses for the government said that he had never heard the petitioner disparage this country.

This witness was careful to say that he had strong feelings against the petitioner. Another witness said that he had heard the petitioner say just after the war had ended that "Germany was not whipped" and "Hitler was not dead." This, of course, was negative proof. The statute does not contemplate an inquiry as to the opinion of an applicant about other countries but the sole inquiry is whether the applicant was and is attached to the principles of our Constitution.

Many of the conversations about which the witnesses complain were had before America became involved in the war. One witness for the government, a lady, who apparently was disinterested, said that in a friendly conversation with the applicant, "he talked of the need of our younger generation for discipline" such as had been employed in the German Army, and the petitioner then discussed how Hitler had drawn to him the young men of Germany. Moreover, she testified that the petitioner had said "if we were organized better here, we would have a better government." And she testified further that on one occasion the petitioner had said that he had sympathy for the "poor German people."

The two witnesses who testified most strongly against the petitioner were witnesses admittedly hostile to him and who had grievances against him. One of them said that the petitioner had boasted on one occasion that, "the Nazis would be over here, and that things would be different," and that he "praised Hitler."

6. In judging the attitude of mind, the trier of the fact could not safely use isolated and detached statements as expressive of the real attitude. On the contrary, the conduct and expressions over a period of time must be used as a premise for an accurate and a correct judgment. The testimony of all the witnesses, both for the petitioner and against him yields but one conclusion, and that is, that the petitioner is attached to the principles of the Constitution and that there is no valid reason why he should not be admitted to citizenship.

7. The authorities support the above viewpoint. In the case of Wixman v. United States, 9 Cir., 167 F.2d 808, the Court of Appeals noted that 31 witnesses had testified for the applicant and 9 against him. The issue in that case was whether the petitioner was attached to the principles of the Constitution of the United States, as in this case. The Court of Appeals was of the opinion that the applicant had not sustained his burden of proof, and affirmed a like decision of the trial court. Upon certiorari and by a per curiam decision of the Supreme Court, the case was reversed "for the reason that there is insufficient evidence in the record to support it." 335 U.S. 874, 69 S.Ct. 233. In that case the evidence was stronger against petitioner than in the case at bar.

In the case of Baumgartner v. United States, 322 U.S. 665, 64 S.Ct. 1240, 88 L.Ed. 1525, the Supreme Court reversed the Court of Appeals, this circuit, 8 Cir., 138 F.2d 29. That court had affirmed the trial court, whose opinion may be found United States v. Baumgartner, D.C., 47 F.Supp. 622. While it is true that in the Baumgartner case it was a proceeding to set aside the order of naturalization and to cancel the certificate, yet the court, in discussing the question of allegiance, 322 U.S. loc. cit. 673-674, 64 S.Ct. loc. Cit. 1244 said: "Allegiance to this Government and its laws, is a compendious phrase to describe those political and legal institutions that are the enduring features of American political society. We are here dealing with a test expressing a broad conception—a breadth appropriate to the nature of the subject matter, being nothing less than the bonds that tie Americans together in devotion to a common fealty. The spacious scope of this conception was expressed by this Court in stating that the Constitution 'was made for an undefined and expanding future, and for a people gathered and to be gathered from many nations and of many tongues' * * *.

"To ascertain fulfillment of a test implying so expansive a reach presents difficult and doubtful problems even for judges presumably well-trained in the meaning of our country's institutions and their demands from its citizens. * * * One of the prerogatives of American citizenship is the

right to criticize public men and measures— *and that means not only informed and responsible criticism but the freedom to speak foolishly and without moderation. Our trust in the good sense of the people on deliberate reflection goes deep. For such is the contradictoriness of the human mind that the expression of views which may collide with cherished American ideals does not necessarily prove want of devotion to the Nation.* (Emphasis mine.) It would be foolish to deny that even blatant intolerance toward some of the presuppositions of the democratic faith may not imply rooted disbelief in our system of government."

In view of the foregoing, it is the opinion and judgment of the court that the petitioner is entitled to admission as a citizen, and he should be permitted to take the prescribed oath renouncing his allegiance to the country of his birth, and pledging his fealty to this government. It will be so ordered.