UNITED STATES ex rel. JOLLY In Behalf of BROWN v. REIMER, Com'r of Immigration, et al.

District Court, S. D. New York.
May 21, 1935.

Gasparc M. Cusumano, of New York City, for relatrix.

Martin Conboy, U. S. Atty., of New York City (C. W. Roberts, Asst. U. S. Atty., of New York City, of counsel), for respondents.

HULBERT, District Judge.

Sheffield Brown was born on Caicos Island January 9, 1916. Thereafter his parents separated, and his mother came to New York about thirteen years ago. His father died, and Sheffield and a younger brother, O'Neil Brown, now aged fifteen, were reared by an aunt on Turks Island, British West Indies.

Sheffield arrived at New York Harbor on April 9, 1935, on the steamship Astrea, first cabin, and had in his possession $20 and first-class transportation to return on the steamship Flora sailing from New York on June 28, 1935, and a British passport issued in Grand Turk, British West Indies, October 24, 1934, valid for five years, but no visa. There is no American Consul on Turks or Caicos Islands.

Relator was taken to Ellis Island and a hearing was had before a Board of Special Inquiry. Relator testified he had come to visit his mother whom he had not seen for thirteen years; that he intends to remain four months and expects to go to high school during that time; that he had left school in Turks Island about four years ago "because the teacher couldn't teach us any more" and has been working since as a fisherman.

Relator's mother, Laurina, was also examined. She resides with her present husband, Fred Jolly, at 420 East Ninety-Third street, Brooklyn, and acts as janitress for a block of houses and together with her husband earns $125 per month. She admitted she had been supporting both of her children since she came to the United States and had paid the passage of Sheffield and also furnished the $20 he had in his possession. She testified she brought her son to the Unit-

ed States to give him an education and besides wants him "in the meantime to work with me doing janitor work in the night time." Asked why she did not send for her younger son, she explained *she was trying to get a permit to send for him* but it had not come yet, and admitted frankly she was trying to bring her children to the United States to live here permanently. She produced a saving's bank book showing $2,062.46 to her credit and again said she wanted her son to stay with her for good, but if he could only come on a visit, would like him to remain a year; that, if she knew he could only come for a visit and not to be employed while here, she would have brought him anyway; and didn't bring him before until she was sure she could support him and would be willing to put up a bond as a condition to his landing.

Two of the board voted that relator was not a bona fide visitor as comprehended under section 3 (2) of the Immigration Act of 1924, 8 USCA § 203 (2), and one member voted to defer for posting of bond insuring alien's departure from the United States within one year, and he was denied admission under section 13 (a) (1) of said act, 8 USCA § 213 (a) (1), as a person not in possession of an immigration visa. An appeal taken by the relator was affirmed by the Board of Review and by the Labor Department.

Executive Order, No. 4813, provides: "Nonimmigrants: With the exceptions hereinafter specified, they must present passports or official documents in the nature of passports issued by the governments of the countries to which they owe allegiance, duly visaed by consular officers of the United States. Exceptions: * * * (4) Citizens of St. Pierre and Miquelon and French citizens domiciled therein; citizens of Canada, Newfoundland, Bermuda, the Bahamas, and British possessions in the Greater Antilles, and British subjects domiciled therein; citizens of Panama, Mexico, Cuba, Haiti and the Dominican Republic. Such persons may pass in transit through the United States, or enter the United States temporarily, without passports or visas".

The respondent contends that the only question here presented is whether the Board of Special Inquiry erred in denying permission to the relator to "enter the United States temporarily."

As to the evidence of the relator the government urges that his declaration that he was coming to attend high school from April to June seems unnatural, and his admission that he quit school four years ago "while still in the grades" renders his declaration incredible. I do not agree. The record shows there is no high school on Turks Island (and probably no grade schools), but just an educational institution like the little old red brick, single-room school, which those of us who have lived in the country in our youth walked miles to attend and received instruction from a teacher of limited capacity. Perhaps the relator has heard of the elaborate school system maintained by the city of New York, through its board of education, and dreamed of securing some educational aid even by only a few months' attendance. He should be commended rather than condemned for that. So the respondent says the only fact lending credence to the relator's declaration that his intended visit is to be temporary is the possession of a return-trip passage which cost him $117 "and even an intended return trip may be abandoned." Certainly not if the government admitted the relator under a bond to utilize his return trip ticket before a specified date.

However, the action taken in excluding the relator seems to have been predicated upon the testimony of his mother. "Having no home to which to return makes the purchase of a round trip ticket seem quite a part of a stage setting" in a plot instigated by the humble but motherly janitress.

Of course, the Commissioner General of Immigration and the Department of Labor are vested with a wide discretion in administering the law under rules promulgated for its enforcement.

But Chryssikos v. Commissioner of Immigration (C. C. A.) 3 F.(2d) 372, 373 is a case in point. In that case relator, a native of Greece, arrived in the United States with a passport issued to her at Naples and visaed by the American Consul. It stated she was "proceeding to the United States on pleasure." She was denied admission, after a hearing before a Special Board of Inquiry had voted two to one for her exclusion. She was asked:

"Q. Don't you wish to stay in the United States and make your home with your husband? A. Of course I want to stay. He is my husband.

"Q. Why didn't you apply to the American Consul for papers that would allow you to stay here permanently? A. I told him I was only coming on a visit.

"Q. If you desire to remain here, why did you say you were coming on a visit? A. I am coming on a visit. I will return to Greece and then come back again.

"Q. Is there any reason why you cannot stay with your husband at this time? A. No, I will be very glad to stay with my husband.

"Q. Then, why didn't you tell the Consul that you wanted to stay with your husband? A. I do not know."

In the Chryssikos Case Manton, Circuit Judge, wrote: "It thus appears that this relator, if she came to the United States as an alien visitor or tourist as she claims, was neither a quota nor a nonquota immigrant nor an immigrant at all, and was not subject to exclusion, but was entitled to be admitted and to remain in the United States not more than six months."

What is more logical than the expressed hope of a mother to have her son remain here and do for him when she was invited by the authorities to express herself? It is manifest she wished to have both of her children with her. She has not succeeded in her efforts. There is no American Consul on Turks Island. It is quite believable that relator came here on a visit, hoped to find out how he and his brother might both enter the country legally, and then return and fetch him here.

The writ will be sustained, and the alien permitted to enter the United States for a period of six months under a bond of $500.