MATTER OF POZZOLI

In Visa Petition Proceedings

SFR–N–12749

*Decided by Regional Commissioner January 28, 1974*

The fact that beneficiary's salary while in the United States will be paid by the foreign affiliate of the petitioning company which is seeking his services does not preclude him from establishing eligibility for classification as an intra-company transferee under section 101(a)(15)(L) of the Immigration and Nationality Act, as amended.

IN BEHLAF OF PETITIONER:   Michael J. O'Connor
Attorney at Law
Patterson, Belknap & Webb
One Wall Street
New York, N. Y. 10005

This case is before the Regional Commissioner on certification pursuant to 8 CFR 103.4. The District Director on August 13, 1973 denied the petition on the ground that beneficiary is not seeking to enter the United States temporarily to render services to the petitioner but rather he will continue to be employed by the petitioner's subsidiary in Italy.

The petitioner is seeking the services of the beneficiary at its corporation offices in San Jose, California, as an Operation Research Manager to work with its General Products Division Headquarters to establish a business plan and product strategy which reflects the needs of the European market place.

The beneficiary is a native and citizen of Italy, presently residing in Milan. He has been employed with the petitioner's subsidiary, International Business Machines, Italia, Milan, Italy, since 1962. His present position is Operations Research Manager of a group working on mathematical models to assist top management in making business decisions. The beneficiary's previous employment with the petitioner's subsidiary was as a Marketing Manager of one of the corporation's sales offices in Italy. The beneficiary's experience has been and will be utilized in the area of marketing computer products. The petitionary corporation has stated in the petition that the beneficiary will continue to be paid by the subsidiary company in his home country.

In his decision the District Director stated:

"Section 101(a)(15)(L) of the Act describes an intracompany transferee as "an alien who immediately preceding the time of his application for admission into the United States has been employed continuously for one year by a firm or corporation or other legal entity or an affilitate or subsidiary thereof and who seeks to enter the United States temporarily in order to continue to render his services to the same employer or a subsidiary or affiliate thereof ..." The issue in this case is does the beneficiary qualify under this section of law and may he be admitted to the United States to perform services for a United States firm if his salary continues to be paid by his previous foreign employer abroad.

No precedent decision exists in this matter. However, the Immigration Act has been historically concerned with the source of remuneration for an alien's services. We refer specifically to two decisions involving visitors for business, to wit: *Matter of M—*, 6 I. & N. Dec. 533, in which it was held that the beneficiary was eligible under section B–1 if the actual accrual of profits remains in a foreign country, and *Matter of B— and K—*, 6 I. & N. Dec. 827, in which the term "business" was not meant to exclude incidental employment if the accrual of profit continued to be from abroad. Further, and more directly to the point, Black's Law Dictionary, Revised Fourth Edition, define "service" in the following manner:

> "Service" and "employment" generally implies that the employer, or person to whom the service is due, both selects and compensates the employee, or person rendering the service. *Ledvinka v. Home Insurance Company of New York*, 139 Md. 434, 115 A. 596, 597, 19 A.L.R. 167.

We construe the foregoing cited decisions to mean that the law recognizes the place where the profits will accrue or where the services will be rendered as the source of the employee's remuneration. Consequently, in the instant case it is construed that the beneficiary will be rendering his services to IBM Italia S.p.A. in Milan, Italy. In that it is they who are compensating his services, it must be to them that his services are due.

A careful review of the Congressional history of this section of law, as well as a general overview of the laws of this country respecting the employer-employee relationship, leads us to conclude that it is the intent of section 101(a)(15)(L) of the Immigration and Nationality Act that the employee or beneficiary be actually employed in the United States. A consultation with the Internal Revenue Service reveals that though the beneficiary would still be liable for United States income taxes in that the

beneficiary will "render his services" in the United States even if the salary is paid from a source abroad, the United States firm is relieved of its obligation to withhold such income tax. Further, the United States employer would be relieved of his responsibility to withhold state and any local taxes and, in addition, any such payments or contributions which he may have to make under the Social Security Act or any other state or local laws governing the security or compensation of its employees. To hold that a source of the beneficiary's salary in this case and similar cases is immaterial would not only be contrary to the heretofore discussed principles regarding employee-employer relationships but would mean that this Service would be in the position of unilaterally discharging the prospective United States employer from his responsibilities and obligations regarding his employee, to wit: the beneficiary. We cannot conclude that it was the intent of the Congress for us to do so, even though this section of law was enacted to facilitate the entry of employees of multi-national or United States firms with subsidiaries abroad.

On the basis of the foregoing discussion, it is concluded that the beneficiary is not seeking to enter the United States temporarily to render services to International Business Machines Corporation, Monterey and Cottle Roads, San Jose, California, but rather he will continue to be employed by IBM Italia S.p.A. in Milan, Italy. Consequently, he is not eligible for classification as intracompany transferee pursuant to section 101(a)(15)(L) of the Immigration and Nationality Act and this petition must be and is hereby denied."

In his brief the Counsel for the petitioner has argued:

"The District Director's decision did not indicate the existence of any evidence disputing the truth of any statements made in the Corporation's petition or that the petition failed to establish that the beneficiary met any of the statutory requirements for L–1 classification. Instead, the decision asserted that the beneficiary was ineligible to come to the United States in an L–1 classification because he would not be rendering services to the Corporation so long as he continued to be paid by IBM Italia. This conclusion was based (a) on erroneous and irrelevant interpretations of both section 101(a)(15)(L) of the Immigration and Nationality Act (the "Act") and the law regarding the employer-employee relationship and (b) on purported "policy" considerations for which no support can be found or was cited in the statute, the regulations or the statutory history.

The petition established that Mr. Pozzoli was employed continu-

ously for more than one year by IBM Italia, that he sought to enter the United States temporarily to work in a capacity that was both managerial and involved specialized knowledge, and that the Corporation and IBM Italia are affiliated. It seems clear, therefore, that regardless of whether he was coming to render his services "to the same employer" (IBM Italia) or to an "affiliate thereof" (the Corporation), he has met all of the statutory requirements. Nevertheless, the District Director's decision concluded:

> "that the beneficiary is not seeking to enter the United States temporarily to render services to International Business Machines Corporation, Monterey and Cottle Roads, San Jose, California, but rather he will continue to be employed by IBM Italia S.p.A. in Milan, Italy. Consequently, he is not eligible for classification as intracompany transferee pursuant to section 101(a)(15)(L) of the Immigration and Nationality Act and this petition must be and is hereby denied."

This conclusion is clearly erroneous as a matter of law because under the statute the beneficiary is eligible for an L-1 classification if he seeks to enter the United States "to render his services" to either the Corporation or IBM Italia, and the determination whether he is actually employed by one or the other is not relevant.

However, assuming, *arguendo*, that the District Director's interpretation of section 101(a)(15)(L) is correct, his conclusion as to Mr. Pozzoli's employer during his assignment in the United States is manifestly incorrect. The rule for determining whether an individual is employed by an employer is stated in 53 Am. Jur. 2d, Master and Servant, S. 2:

> While it is said that at common law there are four elements which are considered upon the question whether the relationship of master and servant exists—namely, the selection and engagement of the servant, the payment of wages, the power of dismissal, and the power of control of the servant's conduct—the *really essential element of the relationship is the right of control*, that is, the right of one person, the master, to order and control another, the servant, in the performance of work by the latter, and the right to direct the manner in which the work shall be done. It is, moreover, essential that the master shall have control and direction not only of the employment to which the contract relates, but also of all of its details and the method of performing the work. . . . In view of some courts, it is also necessary that this work be performed on the business of the master or for his benefit.
>
> "(In determining whether the right of control exists,) possession of either power to employ or the power to discharge is regarded as very strong evidence of the existence of the master and servant relationship, *whereas the payment of wages is the least important factor*. (Emphasis supplied; footnotes omitted).

In this case, the assignee was selected to come to this country

by the Corporation, not IBM Italia; he will work at the Corporation's facility in San Jose; he will be subject to the direction and control of the Corporation's, not IBM Italia's, employees at that location; he will be subject to dismissal by employees of the Corporation, not of IBM Italia and the benefit from his service will accrue to the Corporation, not to IBM Italia. The fact that he will be paid from the IBM Italia payroll is for valid reasons, discussed below, relating to employee benefits in his home country and does not indicate that he is coming "to render his services to" IBM Italia. Under these circumstances, the conclusion seems inescapable that the assignee will be employed by the Corporation, and it should be perfectly clear that he will be rendering his services to the Corporation, not IBM Italia."

In his brief Counsel continues on to explain the factors which persuaded the Corporation's decision to continue the beneficiary's pay through its foreign subsidiary:

"Most of the assignees the Corporation brings to the United States in the L—1 classification are from the countries of Western Europe. These countries generally have more comprehensive social security and social and health insurance benefits than those available in this country. Unless they can retain the maximum amount of such benefits, many employees of the Corporation's foreign subsidiaries are reluctant to accept international assignments.

Conditions and laws differ from country to country, but it appears that in some countries health insurance becomes unavailable for any time during which an employee is not carried on the payroll of his employer in his home country. In others it may be available, but the home country employer is not able to make the appropriate deductions or contributions to the health insurance program on behalf of the assignee unless he is on that employer's payroll. Similarly, the employer in many countries cannot make social security and social insurance contributions for employees unless they are on the employer's payroll. In some countries that permit payment by a foreign employer or by the employee himself, the employee will actually receive smaller benefits on account of such payments than he would have received if the same amounts were paid by his home country employer through payroll deductions. Furthermore, in addition to social security, all of the Corporation's foreign subsidiaries have pension plans for their employees, and participation in certain of these plans is only available to employees on the home country payroll.

The loss or reduction of benefits outlined above can be so

substantial that some employees will refuse to accept international assignments unless they can be assured of retaining maximum social security, social and health insurance and pension benefits. For many others who can make the necessary contributions individually while on the payroll of an employer in the United States, the administrative burden is so substantial that they decline such assignments anyway. In addition, employees who take out long-term personal or mortgage loans often contract to have payments deducted from their salaries under certain conditions. It would be a great inconvenience to such employees to have to work out other arrangements with the lending institutions involved in order to accept a temporary international assignment.

Thus the District Director's decision interprets a law designed to facilitate the assignment to this country of employees of international businesses in such a way as to make such assignments more difficult because they will be less attractive to the individual assignees."

It is noted above that the District Director has made mention of and referred to the Congressional history of the section of law at issue in this case and came to the conclusion that the intent of section 101(a)(15)(L) of the Act was to have the employee be actually employed in the United States. To this, Counsel for the petitioner in his brief has argued in reply:

"In addition, the reference in the decision to the intent of Congress is without foundation. A review of the statute, applicable regulations thereunder and the relevant statutory history (H.R. Rep. No. 851, 91st Cong., 2d Sess. (1970) and *Hearings on S. 2593 Before Subcommittee No. 1 of the House Committee on the Judiciary*, 91st Cong., 1st Sess. (1969)) discloses no indication whatever of any intent by Congress to require or even suggestion of requiring that an assignee should be ineligible for L-1 classification unless he is paid from a payroll in the United States."

We have reviewed the statutory history cited above by Counsel and we must concur with his conclusion. It is clear the whole purpose and intent of legislation as it related to intracompany transferees was to facilitate transferring of key alien personnel freely within an organization having offices in the United States as well as abroad.

It is our opinion that the District Director has erred in this case by his inference that IBM Italia is a separate employer apart from the petitioning corporation. The facts are that the petitioning corporation is the beneficiary's employer whether in Italy or in the United States. Therefore, it is clear to us that the petitioner, a

574

domestic corporation, in its petition is seeking to transfer the beneficiary, to the United States to continue his employment as an executive of the Corporation; and that such transfer is in accordance with the intent of Congress in its passage of legislation amending the Act. The question of where the beneficiary's paycheck may originate is not a relevant factor in determining the beneficiary's eligibility for the nonimmigrant classification sought in the petition before us.

On the basis of all the factors in this case it is concluded that the beneficiary is eligible for classification as an intracompany transferee pursuant to section 101(a)(15)(L) of the Immigration and Nationality Act, as amended, and the petition will be granted.

**ORDER:** *It is ordered* that the petition be and is hereby granted.