## MATTER OF CHARTIER

### In Deportation Proceedings

### A-20927428

*Decided by Board August 3, 1977*

(1) Respondent, a native and citizen of Canada was employed in Canada by the subsidiary of a United States corporation located in Michigan. Respondent worked directly for that company, which had no subsidiary or branch office in Canada. Respondent was admitted to the United States in 1974 as an intra-company transferee under section 101(a)(15)(L) of the Immigration and Nationality Act. In 1976 respondent filed an application for labor certification and the Service instituted an investigation which culminated in deportation proceedings under section 241(a)(1) of the Act predicated on the ground that the respondent was not entitled to L-1 classification.

(2) Section 101(a)(15)(L) of the Act does not expressly require the employer to have a subsidiary or other legal entity abroad. In the context of a deportation proceeding, such a requirement should not be implied.

(3) An alien may be admitted into the United States as an intra-company transferee under section 101(a)(15)(L) of the Act even though the petitioning employer has no subsidiary or other legal entity abroad.

CHARGE:

Order: Act of 1952—Section 241(a)(1) [8 U.S.C. 1251(a)(1)]—Excludable at time of entry under section 212(a)(26)—Nonimmigrant not in possession of valid nonimmigrant visa

Act of 1952—Section 241(a)(1) [8 U.S.C. 1251(a)(1)]—Excludable at time of entry under section 212(a)(20)—Immigrant not in possession of immigrant visa

ON BEHALF OF RESPONDENT:  
Daniel N. King, Esquire  
McClintock, Donovan, Carson & Roach  
2150 Guardian Building  
Detroit, Michigan 48226

ON BEHALF OF SERVICE:  
George Indelicato  
Apellate Trial Attorney

BY: Milhollan, Chairman; Wilson, Maniatis, Appleman, and Maguire, Board Members

In a decision dated November 18, 1976, the respondent was found deportable upon the charges contained in the Order to Show Cause, but granted the privilege of departing voluntarily in lieu of deportation. The immigration judge has certified his decision to us for review, in accordance with the provisions of 8 C.F.R. 3.1(c). We have decided to reverse the immigration judge's decision.

The respondent is a 52-year old native and citizen of Canada. Immediately preceding the time of his application for admission to the

United States, the respondent had been employed in Canada, as Canadian Manager of Technical Services, by Grow Chemical Company, a Michigan corporation.

Grow Chemical Company is a wholly owned subsidiary of Grow Chemical Corporation, headquartered in New York City. The parent corporation had sales of $92.8 million in 1975. The Michigan company forms part of the Automotive Group of the parent corporation. Other subsidiaries, which are part of this Automotive Group, are located in California and Belgium.

Grow Chemical Company manufactures and sells high efficiency thinners, solvents and specialty coatings for industrial applications. Its principal customers are manufacturers of automobiles, trucks and automotive parts in the United States, Canada and Western Europe.

Grow Chemical Company's sales to Canadian customers are approximately one million dollars a year. Despite this substantial Canadian business, the company has never established a Canadian subsidiary or even an office in Canada. Nor is the company officially licensed to do business in Canada. However, the company has stated that it intends to establish a Canadian sales and service subsidiary at some point, when market conditions and the supply of raw materials permit this.

When the respondent was employed by Grow in Canada, he worked out of his home. His job involved visiting automotive assembly plants on a regular basis to make sure that Grow's paint products were being applied properly.[1]

In 1974, Grow decided to transfer the respondent to the United States, in order to perform similar services here.

The company filed a visa petition to classify the respondent as an intra-company transferee under section 101(a)(15)(L) of the Immigration and Nationality Act. The petition was approved by the District Director in Detroit, Michigan. The respondent entered the United States on June 14, 1974, with an L-1 nonimmigrant visa. He received extensions of stay, in the same status, until May 18, 1976. On September 17, 1974, the respondent brought his wife and four children from Etibicoke, Ontario, to Walled Lake, Michigan, to join him.

In July, 1975, the respondent filed an application for a labor certification from the Department of Labor. This event precipitated an investigation into the respondent's immigration status by the Immigration and Naturalization Service office in Detroit.

---

[1] In his affidavit of December 12, 1975, Leslie Stott, Vice-President and General Sales Manager of Grow Chemical Company, stated: "The painting of an automobile is an extremely complex process, and our technical service representative is required to know the process in detail, to know the chemical and other properties of the material being coated, and the coating materials as well as the conditions under which paints and lacquers are prepared and applied in the automotive plants."

The District Director now decided that he had made a mistake in approving an L-1 visa petition in behalf of the respondent. The respondent was informed that he was not qualified for L-1 nonimmigrant status, and that he would be required to leave the United States. The respondent contested the District Director's interpretation of the law, and refused to leave the country voluntarily.

An Order to Show Cause was issued on November 14, 1975. In it, the Service charged that the respondent was not entitled to his L-1 visa classification because he was "not the representative of a foreign subsidiary or entity conducting business in Canada."

By this inartful language, what the Service meant to say was that the respondent's company did not have a subsidiary or affiliate in Canada, and that therefore he did not qualify as an intra-company transferee. The wording of the Order to Show Cause did not, however, cause any confusion.

Because he did not qualify as an intra-company transferee, continued the Order to Show Cause, the respondent was deportable under section 241(a)(1) of the Immigration and Nationality Act, in that, at the time of his entry he was within one or more of the classes of aliens excludable by the law, to wit, aliens who are nonimmigrants not in possession of a valid nonimmigrant visa, as described in section 212(a)(26) of the Act.

The Order to Show Cause also charged that the respondent was excludable under section 212(a)(20) of the Act as an immigrant not in possession of a valid, unexpired immigrant visa. In charging that the respondent entered the United States as an immigrant, the Service was alleging, somewhat redundantly, that, at the time of his entry, the respondent did not come within any of the defined classes of nonimmigrants set out in section 101(a)(15) of the Act. That same section of the Act defines the term "immigrant" as every alien who does not come within one of the defined classes of nonimmigrants.

The respondent denied deportability, claiming that, under a correct interpretation of section 101(a)(15)(L), he did qualify as an intra-company transferee. The respondent also argued that, even if the Service's interpretation of the Act was correct, it should be equitably estopped from deporting him, since it had approved his L-1 visa petition, and he had relied on that approval to his substantial detriment.

On April 7, 1970, the 91st Congress amended the Immigration and Nationality Act, to facilitate the entry of certain aliens into the United States, by creating additional categories of nonimmigrants. See Public Law 91-225. This law added section 101(a)(15)(L) to the Act, 8 U.S.C. 1101(a)(15)(L). It reads as follows:

(L) an alien who, immediately preceding the time of his application for admission into the United States, has been employed continuously for one year by a firm or corporation or other legal entity or an affiliate or subsidiary thereof and who seeks to enter the

United States temporarily in order to continue to render his services to the same employer or a subsidiary or affiliate thereof in a capacity that is managerial, executive, or involves specialized knowledge, and the alien spouse and minor children of any such alien if accompanying him or following to join him.

The Service concedes that the express statutory language does not require the employer to have a subsidiary or other legal entity abroad. The Service argument is that such a requirement should be implied from the statutory requirement that the employment in the United States be temporary. The Service contends that if the corporation has no established foreign branch, there is no place for the alien to return to, and therefore his employment in the United States cannot be deemed temporary.

There are several reasons why this argument fails to convince us.

In the first place, we are reluctant to read implied restrictions into the statute, particularly in the context of a deportation proceeding. It is settled doctrine that deportation statutes must be constructed in favor of the alien. "Since the stakes are considerable for the individual, we will not assume that Congress meant to trench on his freedom beyond that which is required by the narrowest of several possible meanings of the words used." *Lennon* v. *INS*, 527 F.2d 187, 193 (2 Cir. 1975). See *Rosenberg* v. *Fleuti*, 374 U.S. 449, 459 (1963); *Bonetti* v. *Rogers*, 356 U.S. 691, 699 (1958); *Fong Haw Tan* v. *Phelan*, 333 U.S. 6, 10 (1948).

Furthermore, the Service has given us no reason to believe that its interpretation of the statute accords with Congress' intent. Section 101(a)(15)(L) was added to the Act in order to make it easier for corporations doing business in the United States to bring key foreign employees here to work.[2]

The Service's interpretation of the statute would restrict the ability of companies such as Grow, which have not gone through the formalities of establishing subsidiaries or branch offices abroad, to bring their executives or technical specialists to the United States.[3] We see no reason why a distinction should be made between United States companies

---

[2] See House Report No. 91-851.

[3] The respondent has argued that such a result, in this particular case, would be inconsistent with the public policy expressed in the Automotive Products Trade Act of 1965, 19 U.S.C. section 2001 et seq., which implements the United States-Canadian Automobile Agreement of January 16, 1965. The Act sets forth a policy of encouraging the development of a single, unified, North American automobile industry uninhibited by tariffs. It gives United States vehicle and parts manufacturers the opportunity to make their operations more efficient by obviating the need for duplicate production facilities in Canada. The Act thereby makes it possible for some American firms to avoid setting up subsidiaries or extensive facilities in Canada.

In view of our general interpretation of section 101(a)(15)(L), we need not decide what, if any, weight should be given here to the policy set forth in the Automotive Products Trade Act.

with subsidiaries abroad and United States companies with employees abroad who work directly for the parent company.

The Service contends that this distinction is necessary to guarantee that the employee's stay in the United States be temporary. However, the Service ignores the possibility of sending the respondent back to his previous job in Canada. It also ignores the fact that Grow has an affiliate in Belgium to which the respondent could be sent after his sojourn in the United States.

Finally, the Service itself has consistently interpreted section 101(a)(15)(L) generously, so as to facilitate intra-company transfers.[4]

The Service appears to be concerned by the fact that the respondent has applied for a labor certification, which may indicate that he intends to become a permanent resident if he can. However, there is nothing in the law which prevents the respondent from seeking to change his status to that of a lawful permanent resident. In fact, section 245 of the Act, which enables an alien to adjust his status to that of a lawful permanent resident without having to leave the United States to obtain an immigrant visa abroad, is designed to facilitate such changes of status.[5]

In view of our interpretation of section 101(a)(15)(L), we need not reach the estoppel issue raised by the respondent.

**ORDER:** The decision of the immigration judge is reversed. The deportation proceeding will be terminated.

---

[4] See *Matter of Pozzoli,* 14 I. & N. Dec. 569 (R. C. 1974); *Matter of Continental Grain Company,* 14 I. & N. Dec. 140 (D. D. 1972); *Matter of Le Blanc,* 13 I. & N. Dec. 816 (R. C. 1971); *Matter of Vaillancourt,* 13 I. & N. Dec. 654 (R. C. 1970); *Matter of Bocris,* 13 I. & N. Dec. 601 (R. C. 1970); *Matter of Raulin,* 13 I. & N. Dec. 618 (R. C. 1970).

The last two cases, in particular, appear to be inconsistent with the position of the Service here.

[5] The Service has not raised the issue of the respondent's subjective intent when he applied for his L–1 nonimmigrant visa. If the Service had claimed that the respondent was really an intending immigrant when he entered the United States, and therefore not entitled to a nonimmigrant visa, it would have to prove more than the mere fact (assuming it is a fact) that he hoped from the beginning to be able to adjust his status to that of a lawful permanent resident. See *Bong Young Choy* v. *Barber,* 279 F.2d 642, 646 (9 Cir. 1960); *Brownell* v. *Carija,* 254 F.2d 78 (D.C. Cir. 1957); *Chryssikos* v. *Commissioner of Immigration,* 3 F.2d 372 (2 Cir. 1924); *Matter of Hosseinpour,* Interim Decision 2349 (BIA 1975); *Matter of Wellhofer,* 12 I. & N. Dec. 522 (R.C. 1967); *Matter of H–R–,* 7 I. & N. Dec. 651 (R.C. 1958). See also *Matter of Bocris, supra.*